AMERICAN BROACHING MACHINE COMPANY & another *vs.* MEMBERS OF THE MARLBOROUGH BOARD OF TRADE & others.

Suffolk. November 21, 1918. — January 2, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* Accounting, To restrain action at law, To avoid circuity of action and multiplicity of suits.

A manufacturer, seeking a site for a factory for a corporation which he contemplated organizing, interviewed the board of trade of a municipality in this Commonwealth, a voluntary organization composed of many members, and the board through its officers agreed with him in writing that they would procure for him and the corporation a building site and would build a factory thereon, for which the corporation should pay sixty per cent in its notes secured by a mortgage and forty per cent in its preferred stock. This agreement afterwards was modified to the effect that the title to the land should be taken by the corporation. The corporation was formed and made an agreement with a building corporation to purchase certain land agreed upon, payments under the agreement to be refunded and all obligations thereunder to cease if the building corporation was unable to pass a good title. Certain members of the board of trade, who also were officers and chief shareholders of the building corporation, knew that the title was defective. The manufacturer, not knowing so, with his corporation

went to great expense on the assurance of the board of trade that all would be well. The secretary of the board of trade directed a contractor to go ahead with preparations for the building. The title proved defective and loans upon it could not be placed, and the contract could not be carried out. The building corporation brought three actions at law against the manufacturer and his corporation upon the agreement signed by the two corporations. The contractor threatened suit against the plaintiff and his corporation. The plaintiff and his corporation brought a bill in equity against the members of the board of trade, the building corporation and the contractor, alleging the foregoing facts and seeking a determination of the validity of the contentions of the various parties, accountings between and among all parties, a restraining of the actions at law begun and threatened against the plaintiffs, and discovery of the facts as to the contract between the board of trade and the contractor. *Held,* that adequate and complete remedies were afforded at |law, and that there was no jurisdiction in equity upon the facts alleged.

BILL IN EQUITY, filed in the Superior Court on April 17, 1918, and afterwards amended, by the American Broaching Machine Company, a Massachusetts corporation, and Francis J. LaPointe against persons denominated as officers and members of certain committees and certain individual members of the Marlborough Board of Trade, a voluntary association averred in an amendment to the bill to be composed of numerous members but few of whom were known to the plaintiff, the Marlborough Building Association, a Massachusetts corporation, and one Charles McGee.

The allegations of the bill as amended in substance were that the plaintiff LaPointe, seeking a location for a factory for a corporation which he proposed organizing, visited the board of trade of Marlborough; that there were negotiations with them, some in writing, which are described in the opinion and which the plaintiffs averred constituted a contract in writing to the effect that the board of trade should acquire land and build a factory for the corporation to be formed by the plaintiffs, and should take in payment therefor a mortgage of sixty per cent of the cost of the land and building, the remainder of the cost to be paid for in preferred stock of the corporation to be issued to the board of trade; that later, on representations of the defendants Howe and Gage that it was necessary to modify the arrangements because the board of trade, being a voluntary association, could not take the mortgage, it was agreed that LaPointe's corporation, when formed, should take the title and should make application for the mortgage which the board of trade would place. The plaintiff corporation accordingly was formed

and the agreement for the purchase of the land, described in the opinion, was made between it and the defendant Marlborough Building Association, of which Howe was the president and chief shareholder, and the defendant Fletcher, a member of the board of trade, was treasurer, Howe and Fletcher knowing that the title to the land was defective.

It was averred further that the secretary of the board of trade, without the consent of the plaintiffs, before the time for the passing of the papers directed the defendant McGee to proceed with preparations for the building of the factory.

The averments of the bill as to the failure of the title are described in the opinion.

The plaintiffs averred further that the defendant Marlborough Building Association had brought three actions at law, each against both of the plaintiffs upon the contract in writing between it and the plaintiff corporation and that the defendant McGee was about to bring an action at law against the plaintiffs for compensation for his labor and materials. Damages caused to the plaintiffs by reason of the failure of the board of trade to carry out their agreement were specifically described.

The plaintiffs alleged that the plaintiff LaPointe sought no damages as an individual, but joined as a plaintiff in order that he might be bound by any decree.

There also were in the amended bill, besides the allegations as to a trust and as to the accountings sought by the plaintiffs, described in the opinion, allegations stating that the plaintiffs sought the jurisdiction of the court to avoid "circuity of actions and multiplicity of suits." There also were allegations that discovery was necessary in order to ascertain the provisions of the contracts between the defendants, members of the board of trade, and McGee.

All the defendants excepting McGee demurred to the original bill and to the bill as amended. Successive demurrers were heard by *Jenney,* J., and by *J. F. Brown,* J., respectively, and were sustained. A final decree was entered dismissing the bill. The plaintiffs appealed.

*H. J. Jaquith,* for the plaintiffs, submitted a brief.

*R. H. Beaudreau,* (*J. J. Shaughnessy* with him,) for all the defendants except McGee.

CARROLL, J.   The plaintiff LaPointe alleges that he was looking for a factory site in Marlborough and conferred with members of the board of trade of that city.   On October 10, 1917, the board of trade made an offer in writing to purchase a suitable site in Marlborough and erect a building, provided LaPointe would form a corporation and purchase at its par value $20,000 of the common stock.   Frank L. Gage and Sumner C. Gage were to purchase common stock at par to the extent of $2,000, on condition that Sumner C. Gage should become the treasurer of the corporation.   This offer was rejected by LaPointe.   In answer to his letter Frank L. Gage said, "eliminate us from the agreement and we, with the Board of Trade will stand by the rest of the agreement;" and closed by saying, "We shall be glad to see you at your earliest convenience and receive your word to go ahead on the lines desired by you." It is also alleged that a contract in writing was made November 3, 1917, between the plaintiff the American Broaching Machine Company, a corporation which was organized November 7, 1917, and the defendant Marlborough Building Association of Massachusetts, a corporation, by which the building association was to build and the machine company was to purchase certain real estate to be conveyed to it on or before November 15, 1917, by a "good and sufficient *Warranty* deed."   The purchase price was $1,500.   One hundred dollars was paid on the date of the agreement, and on the day of delivery of the deed.   "*Nine hundred* × 100 dollars are to be paid in cash . . . and the remainder is to be paid" in preferred stock of the American Broaching Machine Company.   The agreement stipulated that, if the building association was unable to give title, "payments made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease."   Later, on November 14, 1917, the time for performance was extended to December 1, 1917.   It is further stated that the defendant Gage agreed with the defendant McGee to construct the building, which agreement, the plaintiffs allege, was not assented to by them.

About November 9, 1917, it was found that the title was imperfect.   In one paragraph there is an averment that the defendants Howe and Fletcher knew that the title was defective and "they colluded with the board of trade's officers in an attempt to fraudulently work off a bad title" on the plaintiffs.   There is also an

averment that the plaintiffs were put to expense and the members of the board of trade "conspired to intimidate and oppress the plaintiffs," by bringing two actions of law against them; that the members of the board of trade have "denied any employment of the defendant Charles McGee;" and that McGee "has informed the plaintiffs that he is about to bring an action at law against them." The bill also prays for an accounting under the offer of October 10, 1917, the letter to Gage, and his reply; that the damages, if any, due the Marlborough Building Association be established and ordered paid; that damages due the defendant McGee and the plaintiffs' damages caused by the board of trade be paid; that the amount due "McGee or Marlborough Building Association, or plaintiffs," shall be determined, and the "proportion of contribution of each." There is also a prayer for an injunction restraining the prosecution of the action at law.

There were several amendments to the bill, — one alleging that the agreement of sale of November 3 "constituted a trust for the benefit of the defendant board of trade;" by another, LaPointe made no claim for damages as an individual and "No remedy is sought in this action for the fraud and conspiracy which has been set out merely as inducement to show the need of equitable relief." In the Superior Court all the defendants, except McGee, demurred; the demurrers were sustained and a decree was entered dismissing the plaintiffs' bill.

The negotiations with the Marlborough Board of Trade contemplated the securing of a factory site for LaPointe and the corporation he was to organize. The result of these negotiations was the contract between the American Broaching Machine Company and the Marlborough Building Association. LaPointe does not now ask compensation in damages; and even if it be assumed that the American Broaching Machine Company has any claim against the members of the Marlborough Board of Trade, it has a plain, adequate and complete remedy at law and cannot ask for relief in equity. If the contract between the American Broaching Machine Company and the Marlborough Building Association was broken by the latter, the former can settle all its rights by an action at law and there is no reason why it should resort to a court of equity. The averment that the contract between the two corporations "constituted a trust for the benefit of the defendant

board of trade," is insufficient to establish a right to equitable relief.

If the contractor McGee brings an action at law against the plaintiff corporation, we see no reason why it cannot fully and completely protect its rights in such an action. See *McNeil* v. *Ames*, 120 Mass. 481, 486. No reason is shown for restraining the Marlborough Building Association from prosecuting the actions at law.

Without considering whether the bill is multifarious, it is enough to say that no error of law appears. The plaintiffs have a full, adequate and complete remedy at law, and the demurrers were sustained properly.

*Decree dismissing the bill affirmed with costs.*