272 F.2d 121
 FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant,
v.
Thomas J. FITZGERALD, Trustee in Bankruptcy, Appellee.
Matter of MIDYETT AND MAY CONSTRUCTION COMPANY, a partnership, consisting of Horace Leon Midyett and Ruel Farries May, Bankrupt.
 No. 6167.
 United States Court of Appeals Tenth Circuit.
 November 3, 1959.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED H. Gayle Weller, Denver, Colo. (John R. Hickisch, Denver, Colo., on the brief), for appellant.
 John W. Low, Denver, Colo., for appellee.
 Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 This is an appeal from an order of the United States District Court for the District of Colorado, affirming on a petition for review, an order of the referee denying in part the amended claim of Fidelity and Deposit Company of Maryland, hereinafter called Fidelity Company, filed against the estate of Midyett and May Construction Company, a partnership, Bankrupt, hereinafter referred to either as the Construction Company or the Bankrupt.
 
 
 2
 The Construction Company was adjudged a bankrupt on March 13, 1957. Prior to bankruptcy, the Construction Company had engaged in the construction business and had entered into a number of construction contracts. In connection with each of such contracts, the Construction Company, as principal, and Fidelity Company, as surety, executed and delivered to the owner, the other party to the construction contract, a performance bond.
 
 
 3
 On September 13, 1956, the Construction Company executed and delivered to Fidelity Company a contract collateral to such performance bond contracts, in which the Construction Company agreed to indemnify and save Fidelity Company harmless from and against any loss, cost, liability or expense which Fidelity Company should at any time sustain or incur in consequence of such performance bonds.
 
 
 4
 Within the six-month period "after the first date set for the first meeting of creditors" (11 U.S.C.A. § 93, sub. n), Fidelity Company filed its original unsecured claim, in part a contingent liability claim and in part a liquidated surety claim.[1]
 
 
 5
 After the expiration of the six-month period and on May 21, 1958, Fidelity Company filed its amended claim in which it alleged:
 
 
 6
 "2. That * * * the above-named bankrupt was at and before the filing by it of its petition for adjudication of bankruptcy justly and truly liable to * * * Fidelity * * * Company * * * in the sum of $390,409.19 as a contingent liability, that * * * bankrupt is now indebted to * * * Fidelity * * * Company * * * in the sum of $74,713.07 as a liquidated claim.
 
 
 7
 * * * * * *
 
 
 8
 "B. That on or about May 14, 1956, * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $85,089.00 to the School District No. 50 Adams County, Westminster, Colorado, wherein the bankrupt was principal, that under the said bond * * * Fidelity * * * Company as surety became obligated to pay and did pay $5,083.07, that in addition the said surety incurred and paid expenses in the amount of $487.74.
 
 
 9
 "C. That on or about May 15, 1956 * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $19,956.00 to the Continental Oil Company wherein the bankrupt was principal. That under the said bond * * * Fidelity * * * Company as surety became obligated to pay and did pay $1,276.00, that in addition the said surety incurred and paid expenses in the amount of $75.00, that there was attached to the original claim an executed copy of affidavit of assignment with regard to the payment as made under the bond to the Denver Glass Company.
 
 
 10
 "D. That on or about May 24, 1956 * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $90,824.00 to the Board of Education, School District No. 6, Arapahoe County, Colorado, wherein the bankrupt was principal. That under the said bond * * * Fidelity * * * Company as surety became obligated to pay and did pay $14,854.74, that in addition the said surety incurred and paid expenses in the amount of $602.51. That one of the claims * * * paid was $94.61 to the Union Supply Company who has filed a claim being claim #24 in the amount of $94.61. That one of the claims * * * paid was $1550.27 to Stephan Dach who has filed claim #19 in the amount of $2388.77.
 
 
 11
 "E. That on or about July 30, 1956 * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $34,143.26 to the Denver Methodist Church Extension Society and the Thornton Methodist Church, wherein the bankrupt was principal. That under the said bond * * * Fidelity * * * Company as surety became obligated to pay and did pay $11,626.50, that in addition the said surety incurred and paid expenses in the amount of $951.60, that one of the claims * * * paid was the Arvada Lumber Company in the amount of $7.89, that the said Arvada Lumber Company has filed a claim, being Claim Number 8, in the amount of $111.03. That one of the claims * * * paid was Stephan Dach in the amount of $600.00, that Stephan Dach has filed a claim in this bankruptcy estate, being Claim Number 19, in the amount of $2,388.77. That one of the claims * * * paid was the Barnett Company in the amount of $52.50, that the Barnett Company has filed a claim in this bankruptcy estate, being Claim Number 28, for the amount of $52.50. That one of the claims * * * paid was Kitchen Distributors, Inc. in the amount of $28.15, that Kitchen Distributors, Inc. has filed a claim in said bankruptcy estate, being Claim Number 41 in the amount of $272.97.
 
 
 12
 "F. That on or about October 24, 1956 * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $25,000.00 to the Harvey Park Baptist Church wherein the bankrupt was principal. That under the said bond * * * Fidelity * * * Company * * * as surety became obligated to pay and did pay $5,887.95, that in addition the said surety incurred and paid expenses in the amount of $436.00. That one of the claims * * * paid was Stephan Dach in the amount of $400.00, that Stephan Dach has filed a claim in this bankruptcy estate, being Claim Number 19, in the amount of $2,388.77. That one of the claims * * * paid was Gump Glass Company in the amount of $217.00, that the Gump Glass Company has filed a claim in this bankruptcy estate, being Claim Number 29, in the amount of $1561.32. That one of the claims * * * paid was the Denver Hardware Co. in the amount of $592.65, that Denver Hardware Co. has filed a claim in this bankruptcy estate, being Claim Number 39 in the amount of $1261.52. That one of the claims * * * paid was Kitchen Distributors, Inc. in the amount of $244.82, that Kitchen Distributors, Inc. has filed a claim in this bankruptcy estate, being Claim Number 41, in the amount of $272.97.
 
 
 13
 "G. That on or about December 20, 1956, * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $135,396.93 to Hod Carriers and Laborers Union No. 720 wherein the bankrupt was principal. That under the said bond * * * Fidelity * * * Company as surety became obligated to pay and did pay $30,440.40, that in addition the said surety incurred and paid expenses in the amount of $2991.56. That one of the claims * * * paid was $391.50 to Caissons, Inc. who have filed Claim Number 15 in the amount of $445.50. That one of the claims * * * paid was $635.00 to Nyco who has filed Claim Number 32 in the amount of $1385.00."
 
 
 14
 In the original claim it was alleged that no part of the liability had been paid; that there were no setoffs or counterclaims to the liability; that Fidelity Company does not have any security or securities for the liability; that the liability is founded upon the indemnity agreement, a copy of which was attached to the original claim, and that such claim is unsecured. The amended claim contained substantially the same allegations.
 
 
 15
 The trustee filed objections to the allowance of the claim, as amended, on two grounds: One, that the claim was not filed in the names of the creditors to whom Fidelity Company had made payments, as required by § 57, sub. i of the Bankruptcy Act; and Two, that the claim did not set forth with sufficient definiteness a proof of loss sufficient to constitute Fidelity Company a creditor under § 57, sub. a of the Bankruptcy Act. Fidelity Company moved the court for leave to amend, so as to substitute as claimants, for the benefit of Fidelity Company, the creditors to whom Fidelity Company had made payments as surety under its bond, as set forth in the claims. The referee denied the motion to amend on the ground that it would set up a new claim, filed after the six-month period had elapsed.
 
 
 16
 Section 63, sub. a and (8) of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a and (8) reads:
 
 
 17
 "(a) Debts of the bankrupt may be proved and allowed against his estate which are founded upon * * * (8) contingent debts and contingent contractual liabilities; * * *."
 
 
 18
 Section 57, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. d, provides:
 
 
 19
 "(d) Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: Provided, however, That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title." Section 57, sub. i of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. i reads as follows:
 
 
 20
 "(i) Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person fails to prove and file such claim, such person may do so in the creditor's name and, if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor."
 
 
 21
 General Order 21(4), 11 U.S.C.A. following section 53 provides:
 
 
 22
 "(4) The claims of persons contingently liable for the bankrupt or debtor may be proved in the name of the creditor when known by the party contingently liable. When the name of the creditor is unknown, such claim may be proved in the name of the party contingently liable; but no dividend shall be paid upon such claim, except upon satisfactory proof that it will diminish pro tanto the original debt."
 
 
 23
 The purposes of § 57, sub. i, supra, and of General Order 21(4) are to prevent double proof of claims and promote orderly administration in bankruptcy.
 
 
 24
 The right of Fidelity Company to assert a claim for expenses is predicated on the indemnity agreement. The expense portion of the amended claim was allowed by the referee and is not here involved.
 
 
 25
 The claim asserted in Paragraph C of the amended complaint was an assigned claim and was allowed by the referee and is not here involved.
 
 
 26
 The remaining claims of Fidelity Company were predicated on its potential or accrued rights of subrogation under § 57, sub. i, supra, together with § 63, sub. a and (8), supra, and General Order 21(4), supra, which provide the only way in which a surety can present a claim and participate in the distribution of a bankrupt's estate.[2]
 
 
 27
 The right to subrogation under § 57, sub. i, supra, does not depend upon whether the surety pays the principal creditor before or after "the adjudication in bankruptcy." In either event, subject to the limitations in the proviso in § 57, sub. d, supra, the surety is entitled to subrogation.[3]
 
 
 28
 The allegations of Fidelity Company's claims, predicated on contingent liability, were imperfect and required amplification and greater certainty and specificity. Moreover, the claims of Fidelity Company on its contingent liability for the bankrupt, as surety on the performance bonds, to the bankrupt's creditors under such bonds, to the extent that such creditors were known by Fidelity Company, should have been filed in the names of the creditors, and only where such creditors' names were unknown to Fidelity Company should they have been filed in the name of Fidelity Company. However, sufficient facts were averred in the claims predicated on contingent liability to show that Fidelity Company would be entitled, if and when and to the extent it discharged in whole or in part its liability as surety on such bonds to creditors of the bankrupt, to be subrogated, both under the provisions of § 57, sub. i, supra, and the equitable principles of subrogation, to the rights of such creditors of the bankrupt.
 
 
 29
 The allegations of Fidelity Company's claims predicated on payments it had made for the bankrupt, as surety on the performance bonds, to the bankrupt's creditors were likewise imperfect and required amplification and greater certainty and specificity. Moreover, claims predicated on such payments should have been filed only where the creditor had not filed a claim for a debt which Fidelity Company had discharged in whole or in part. That, we think, is the clear intendment of § 57, sub. i, supra.
 
 
 30
 However, where such a payment was made, after the filing of the contingent claim, to a creditor who had filed a claim, we think it was right and proper for Fidelity Company to file as a supplement to its contingent claim a verified written statement showing that it had discharged its surety obligation to the creditor in whole or in part and was entitled to be subrogated to that extent to the rights of the creditor.[4] So to do would merely establish partial liquidation of the contingent claim.
 
 
 31
 Where a creditor to whom a debt was owing by the bankrupt, for the payment of which Fidelity Company was liable as surety on one of the performance bonds, had filed a claim for such debt and Fidelity Company had discharged such debt in whole or in part, it was not necessary for Fidelity Company to file a claim. However, if the claim filed by the creditor fails to allege the fact of the payment of the claim in whole or in part by Fidelity Company and thereby fails to show the latter's right to subrogation, Fidelity Company could, with propriety and, indeed, we think it should by appropriate action, advise the Bankruptcy Court that it had discharged the claim in full or in part and to that extent had become subrogated to the rights of the creditor.[5]
 
 
 32
 And, where, at the time of bankruptcy Fidelity Company only had a contingent claim and thereafter, within the limitations in the proviso in § 57, sub. d, discharged its liability as surety on one of the performance bonds, for a debt for which the creditor had filed a claim, we think it would be proper for Fidelity Company to take appropriate action to advise the Bankruptcy Court that it had discharged such creditor's claim in whole or in part and to the extent of such discharge was entitled to be subrogated to the rights of the creditor.
 
 
 33
 Where there is a substitution as party plaintiff or claimant of one having the legal right to sue instead of one improperly named as plaintiff or claimant and the party substituted bears some relation of interest to the original party, there is no change in the cause of action[6] and the substitution relates back to the commencement of the action or proceeding or the filing of the claim.[7] The same result follows when an action is brought by a person who has a beneficial interest in the subject matter and the person who has the legal right to sue is substituted as suing for his use.[8]
 
 
 34
 When the substitution of a plaintiff by amendment does not change the claim or cause of action, the amendment relates back to the commencement of the action or the filing of the claim and stops the running of the statute of limitations at that point.[9]
 
 
 35
 Here, the substitution of the names of the creditors for Fidelity Company in the contingent claims would merely be the substitution of the claimant having the legal right to sue in place of Fidelity Company, and the claim would be for the benefit of Fidelity Company to the extent it should become subrogated to the rights of the creditors. Such a substitution would in nowise change the claim or cause of action and such amendment or substitution would relate back to the filing of the original claim and stop the running of the statute of limitations at that point. Likewise, the substitution for Fidelity Company, in its liquidated claims, of the names of the creditors who had failed to file claims where, as surety on the performance bonds, it had discharged debts of the bankrupt to such creditors in whole or in part, and had thereby become entitled to rights of subrogation, would be no more than the substitution of the creditors having the legal rights to assert the claims, for Fidelity Company, which has a beneficial interest in the subject matter. Such a substitution would not change the claim or cause of action and the substitution would relate back to the date of the filing of the claim and stop the running of the statute of limitations at that point.
 
 
 36
 The Bankruptcy Court is a court of equity and endeavors to do equity and "* * * the trend of modern decisions is uniformly toward the greatest liberality in the allowance of the filing of amended proofs of claim, where there is anything in the record to justify such course of action."[10]
 
 
 37
 While the time limitation in the Bankruptcy Act for filing of creditors' claims (11 U.S.C.A. § 93, sub. n) is "* * * construed strictly with respect to an original filing, * * * when a claim has been filed within the statutory period, an amendment thereof may be allowed after the expiration of the time for filing."[11] Such amendment may be allowed to make perfect an imperfect claim after the expiration of the six-month period. The only limitation is that the amended claim should not set up a distinctly new and different claim. A change in the amount of the claim does not make it a new and different claim.[12] The amendment relates back to the date the original claim was filed.[13]
 
 
 38
 Fidelity Company should amend its contingent claims by setting forth the dates and amounts of the performance bonds creating such contingent liability; the names of the persons to whom the bonds run; the names of the creditors to whom such contingent liability exists, if known, and if not, that fact should be stated. It should further state the amount of its contingent liability to each of such creditors, where known, and if not, that fact should be stated. It should also amend such contingent claims by substituting for its name the names of creditors, where known.
 
 
 39
 Fidelity Company should amend its liquidated claims, embraced in its original claim, for amounts paid in discharge of its surety obligation under its performance bonds to creditors who had not filed claims, by setting forth the dates and amounts of the performance bonds involved, the names of the persons to whom such bonds run, the names of the creditors to whom it made payments in discharge of its surety obligation, the amount of each payment and the fact that none of such creditors had filed a claim. It should also substitute in such liquidated claims for its name the names of the creditors to whom such payments were made.
 
 
 40
 Such amendments by Fidelity Company will merely perfect, amplify and make more specific the original claims and will not set up a new and different claim or cause of action and will be proper.[14]
 
 
 41
 In instances where there is a difference between the amount of a claim filed by a creditor and the amount of such claim which Fidelity Company asserts it has discharged as surety, such difference can be resolved by proof, and if the proof establishes errors in amounts, the claims may be amended to conform to the proof. An amendment changing the amount of the claim does not make it a new claim and may be made after the six-month period has expired.[15]
 
 
 42
 As to whether contingent claims of Fidelity Company that have not yet been liquidated or estimated shall be allowed, when liquidated or estimated, or shall be denied because of the expiration of the time fixed by the court for such liquidation or estimation, or because the court finds they are not capable of liquidation or reasonable estimation, or because such liquidation or estimation would unduly delay the administration of the estate, we express no opinion. Those matters will be for further determination by the court.
 
 
 43
 The order of the District Court affirming the order of the referee and the order of the referee are reversed and the matter is remanded for further proceedings in accordance with the views herein expressed.
 
 
 
 Notes:
 
 
 [1]
 In its original claim Fidelity Company alleged that at and before the filing of the petition in bankruptcy, the Construction Company was justly and truly liable to the Fidelity Company in the sum of $390,409.19, as a contingent liability, and that the Bankrupt was now indebted to the Fidelity Company in the sum of $24,472.86, as a liquidated claim, and $226,220.93 on a contingent contractual liability claim. It further set out in the claim:
 "B. That on or about May 14, 1956 * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $85,089.00 to the School District No. 50, Adams County, Westminster, Colorado, wherein the bankrupt was principal, that under the said bond * * * Fidelity * * * Company as surety became obligated to pay and did pay $5,083.07, that in addition the said surety incurred expenses in the amount of $487.74.
 "C. That on or about May 15, 1956, * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $19,956.00 to the Continental Oil Company wherein the bankrupt was principal. That under the said bond * * * Fidelity * * * Company as surety became obligated to pay and did pay $1,276.00, that in addition the said surety incurred expenses in the amount of $75.00, that there is attached hereto an executed copy of affidavit of assignment with regard to the payment as made under the bond to the Denver Glass Company.
 "D. That on or about May 24, 1956 * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $90,824.00 to the Board of Education, School District No. 6, Arapahoe County, Colorado, wherein the bankrupt was principal, that some claims have been paid, but the obligee still has a claim which has not been settled, that the total amount due under the bond cannot be ascertained and therefore this portion of the claim of * * * Fidelity * * * Company * * * is a contingent contractual liability in the amount of $90,824.00.
 "E. That on or about July 30, 1956, * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $34,143.26 to the Denver Methodist Church Extension Society and the Thornton Methodist Church, wherein the bankrupt was principal. That under the said bond * * * Fidelity * * * Company as surety became obligated to pay and did pay $11,626.50, that in addition the said surety incurred expenses in the amount of $951.60, that one of the claims * * * paid was the Arvada Lumber Company in the amount of $7.89, that the said Arvada Lumber Company has filed a claim, being Claim Number 8, in the amount of $111.03, that a portion of the Arvada Lumber Company's claim apparently was for the amount subsequently paid by * * * Fidelity * * Company * * *. That one of the claims * * * paid was Stephan Dach in the amount of $600.00, that Stephan Dach has filed a claim in this bankruptcy estate, being Claim Number 19, in the amount of $2,388.77, that the said claim of Stephan Dach apparently contains a claim for the amount which was subsequently paid by * * * Fidelity * * Company * * *. That one of the claims * * * paid was the Barnett Company in the amount of $52.50, that the Barnett Company has filed a claim in this bankruptcy estate, being Claim Number 28, for the amount of $52.50. * * * That one of the claims * * * paid was Kitchen Distributors, Inc. in the amount of $28.15, that Kitchen Distributors, Inc. has filed a claim in said bankruptcy estate, being Claim Number 41, in the amount of $272.97, that the said claim of Kitchen Distributors, Inc. apparently contains a claim for the amount which was subsequently paid by * * * Fidelity * * * Company * * *.
 "F. That on or about October 24, 1956, * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $25,000.00 to the Harvey Park Baptist Church wherein the bankrupt was principal. That under the said bond, * * * Fidelity * * * Company * * * as surety became obligated to pay and did pay $5,887.95, that in addition the said surety incurred expenses in the amount of $436.00. That one of the claims * * * paid was Stephan Dach in the amount of $400.00, that * * * Dach has filed a claim in this bankruptcy estate, being Claim Number 19, in the amount of $2,388.77, that the said claim of * * * Dach apparently contains a claim for the amount which was subsequently paid by * * * Fidelity * * * Company * * *. That one of the claims * * * paid was Gump Glass Company in the amount of $217.00, that the Gump Glass Company has filed a claim in this bankruptcy estate, being Claim Number 29, in the amount of $1561.32, * * *. That one of the claims paid was the Denver Hardware Co. in the amount of $592.65, that Denver Hardware Co. has filed a claim in this bankruptcy estate, being Claim Number 39 in the amount of $1261.52, that the said claim of Denver Hardware Co. apparently contains a claim for the amount which was subsequently paid by * * * Fidelity * * * Company * * *. That one of the claims * * * paid was Kitchen Distributors, Inc. in the amount of $244.82, that Kitchen Distributors, Inc. has filed a claim in this bankruptcy estate, being Claim Number 41, in the amount of $272.97, that the said claim of Kitchen Distributors, Inc. apparently contains a claim for the amount which has now been paid by * * * Fidelity * * * Company * * *.
 "G. That on or about December 20, 1956 * * * Fidelity * * * Company * * * as surety executed a bond in the amount of $135,396.93 to Hod Carriers and Laborers Union No. 720 wherein the bankrupt was principal, that a claim is at present being made by the obligee, the Hod Carriers and Laborers Union No. 720, that the amount due cannot now be ascertained and therefore the claim of * * * Fidelity * * Company * * * against the bankrupt is in the amount of $135,396.93 and is a contingent contractual liability."
 
 
 [2]
 Remington on Bankruptcy (Henderson), Vol. 2, § 837, pp. 256, 257; J. S. Farming Co. v. Brannon, 6 Cir., 263 F. 891
 
 
 [3]
 Allen v. See, 10 Cir., 196 F.2d 608, 610
 
 
 [4]
 See: In the Matter of Magnus Harmonica Corporation, 3 Cir., 237 F.2d 867, 869
 
 
 [5]
 In the Matter of Magnus Harmonica Corporation, 3 Cir., 237 F.2d 867, 869
 
 
 [6]
 New York Evening Post Co. v. Chaloner, 2 Cir., 265 F. 204, 213; United States v. Saunders Petroleum Co., D.C.W.D.Mo., 7 F.R.D. 608, 609; 67 C.J.S. Parties § 85 b., pp. 1075, 1076; 39 Am.Jur., Parties §§ 98, 99, pp. 967, 968; General Order 37, 11 U.S.C.A. following section 53, p. 96; Rule 15(c), Federal Rules of Civil Procedure, 28 U.S.C.A
 
 
 [7]
 See cases cited Note 9
 
 
 [8]
 New York Evening Post Co. v. Chaloner, 2 Cir., 265 F. 204, 213; United States v. Saunders Petroleum Co., D.C.W.D.Mo., 7 F.R.D. 608, 609; Irving Trust Co. v. American Silk Mills, 2 Cir, 72 F.2d 288, 290; Sundgren v. Topeka Transportation Company, 178 Kan. 83, 283 P.2d 444, 448, 449; Heard v. Turner, 234 Mass. 526, 125 N.E. 596; 67 C.J.S. Parties § 85 b, pp. 1075, 1076; 39 Am.Jur., Parties §§ 98, 99, pp. 967, 968; General Order 37, 11 U.S.C.A. following section 53, p. 96; Rule 15(c), Federal Rules of Civil Procedure, 28 U.S.C.A
 
 
 [9]
 American Fidelity & Cas. Co. v. All American Bus Lines, 10 Cir., 190 F.2d 234, 237; Weldon v. United States, 1 Cir., 65 F.2d 748, 749; 54 C.J.S. Limitation of Actions § 277, p. 315
 
 
 [10]
 Continental Motors Corporation v. Morris, 10 Cir., 169 F.2d 315, 317; Scottsville Nat. Bank of Scottsville, Va. v. Gilmer, 4 Cir., 37 F.2d 227, 229
 
 
 [11]
 In re Prindible, 3 Cir., 115 F.2d 21, 23
 
 
 [12]
 Continental Motors Corporation v. Morris, 10 Cir., 169 F.2d 315, 317
 
 
 [13]
 General Order 37, 11 U.S.C.A. following section 53, p. 96; Rule 15(c), Federal Rules of Civil Procedure, 28 U.S.C.A.; Superior Mfg. Corporation v. Hessler Mfg. Company, 10 Cir., 267 F.2d 302, 304
 
 
 [14]
 See: Superior Mfg. Corporation v. Hessler Mfg. Company, 10 Cir., 267 F.2d 302, 304
 
 
 [15]
 Continental Motors Corporation v. Morris, 10 Cir., 169 F.2d 315, 316, 317