**In re Lawrence FEITLINGER, Debtor.**

**Bankruptcy No. B 2–75–475.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Nov. 6, 1987.

Thomas C. Scott, Thompson, Hine and Flory, Columbus, Ohio, for trustee.

Fred G. Preston, Columbus, Ohio, Trustee.

John W. Leibold, Columbus, Ohio, for claimant.

**ORDER OVERRULING OBJECTION TO CLAIM OF WALTER W. WOLERY**

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon an objection filed on behalf of Fred G. Pres-

ton, the duly-appointed trustee in bankruptcy ("Trustee"). The Trustee objects to the allowance of claim # 24, filed by Walter W. Wolery ("Wolery") in the amount of $54,-499.98. The objection was opposed by Wolery and was heard by the Court. Because this case was filed in 1975, this contested matter is governed by the provisions of the Bankruptcy Act of 1898 (now repealed).

The thrust of the Trustee's objection is that Wolery, if a guarantor of an obligation of Lawrence Feitlinger ("Debtor"), has not adequately documented that relationship. Further, the creditor for whom Wolery is alleged to have guaranteed payment has failed to file a claim in this case, and the Trustee argues that Wolery therefore is precluded by § 57(i) of the Bankruptcy Act from asserting any derivative claim. Should the Court find that Wolery is a co-maker rather than a guarantor, the Trustee argues that Wolery's claim must be limited to a right of contribution. In response, Wolery asserts that his claim of recourse as a guarantor is proper because § 57(i) does not apply to this matter and that the Trustee's objection comes too late to merit consideration.

The Court finds the following facts. On July 5, 1974 Walter W. Wolery ("Wolery"), the Debtor, and John Wolery, brother of Wolery, executed an unsecured promissory note ("Note") in favor of The Peoples National Bank of Delphos ("Bank"). All three signatures appear on the bottom right face of the Note. The typed name and address of Lawrence Feitlinger and Associates, Inc. ("Associates") appeared on the bottom left face of the Note. No representative signature of an officer or other authorized agent of Associates appears as such on the face of the Note.

The terms of the Note provide for a principal obligation of $50,000.00 at 13.5% interest to be repaid in three installments of $18,166.66 each, payable on November 5, 1974, March 5, 1975 and July 5, 1975.

On July 8, 1974 Wolery and his wife executed a separate Installment Loan Agreement with the Bank, promising to repay the same obligation as that represented by the Note. The payments under that installment agreement were the same as those for the Note. To secure Wolery's repayment, the Bank also obtained a mortgage upon real property owned by Wolery and his wife.

On July 10, 1974, the proceeds from the loan evidenced by the Note were deposited in a checking account ("the Account") established with the Bank on July 5, 1974 under the name and social security number of Lawrence Feitlinger. Curiously, the authorized signatures for the Account were expressed as "Lawrence Feitlinger or c/o Lawrence Feitlinger & Associates, Inc." Because the Bank was unable to produce a copy of the negotiated check for the loan proceeds, it is not known whether those proceeds were paid directly to the Debtor or were first paid to Associates and then endorsed over to the Debtor. In any event, by August 5, 1974, all but $730.73 of the proceeds had been withdrawn from the Account.

Apparently the first $18,166.66 installment due under the Note was not paid. On February 5, 1975, Wolery and his wife executed an extension agreement with the Bank and agreed to repay the entire $54,-499.98, representing the principal and financing charge for the obligation evidenced both by the Note and the Installment Loan Agreement and secured by the mortgage against the Wolerys' property. The terms of this repayment were $450.00 each month, including interest of 9% per year, beginning March 5, 1975, and concluding with a final balloon payment on February 5, 1976. Wolery paid that obligation in full, and now seeks reimbursement of those amounts from this estate.

The issues before the Court are threefold. First, it must be determined in what capacity the various signatories to the note are obligated. Is Associates the primary obligor and the other three signatories guarantors with secondary liability and rights of indemnification, or are all co-makers possessing only rights of contribution? Once the capacity issue and its associated rights have been resolved, the Court must consider if Wolery's claim is procedurally correct such that it is properly allowable

under the relevant statutory sections of the Bankruptcy Act. Finally, to the extent Wolery's claim is improper, is the Trustee's objection so delayed that notions of equity bar its assertion?

The Court believes that the Bank looked first and primarily to Associates for repayment of the Note. Whether that expectation is legally justified, given the lack of any representative signature binding Associates, is not before the Court. This finding is buttressed by the fact that the Bank filed its proof of claim based upon the obligations under the Note only in the related Chapter VII case of Associates. Wolery also filed a claim in the Associates case, and upon objection to Wolery's claim by the trustee in that case, Wolery agreed to the terms of an order disallowing his claim as asserted and recognizing the primacy of the Bank's claim. While the order disallowing Wolery's claim does not establish the correctness of the Bank's position that Associates was the primary obligor, it is an indication of the Bank's belief in that regard. This result does not establish whether Wolery is a co-maker or an accomodation party, but serves only to eliminate any finding that he is the sole or primary maker.

■ Because Wolery's signature appears on the lower right corner of the face of the Note with the signatures of the Debtor and John Wolery without any indication of secondary liability, the Court finds that Wolery's status is that of a maker rather than an indorser. Ohio Rev. Code § 1303.38 (Official Comment); *Huron County Banking Co., N.A. v. Knallay*, 22 Ohio App.3d 110, 489 N.E.2d 1049 (1984). However, the distinction by which an indorser is obligated to pay only upon prior presentment, dishonor, and protest, and a maker is obligated without such conditions, relates only to Wolery's relationship to the Bank. Wolery's rights against the Debtor depend upon his characterization as a co-maker or accommodation maker. If Wolery is a co-maker, his rights against the Debtor are only for proportionate contribution. If Wolery is an accommodation maker, he has a right of recourse against the party accommodated in the same manner as a surety. Ohio Rev. Code § 1303.51(E). That status is a question of fact as to which oral proof may be received. Ohio Rev. Code § 1303.51(C); *Huron*, 489 N.E. 2d at 1054; *F.D.I.C. v. Blue Rock Shopping Center, Inc.*, 766 F.2d 744 (3rd Cir. 1985). The form of the signature is not controlling in the context of a commercial paper transaction, and the burden of showing status as an accommodation maker is upon Wolery, as the party claiming such status. *Commerce Union Bank v. Davis*, 581 S.W.2d 142 (Tenn.App.1978).

■ Some of the factors courts have considered in determining whether a maker is a co-maker or an accommodation maker are the location of the signature on the note, the language of the note, whether the maker received any of the loan proceeds, and the intent of the parties. *Huron*, 489 N.E. 2d at 1054. Because the location of Wolery's signature and the language of the Note are inconclusive as to his status as a co-maker or accommodation party, the factors of benefit and intent assume greater importance in this instance. Although it is not clear if Associates or the Debtor initially received the loan proceeds, the evidence established that none of those proceeds went to Wolery. Even though the parties had orally agreed that the funds were to be used by the Debtor to purchase certain shares of American Airmotive, Inc., a company owned in part by Wolery, that stock was never purchased by the Debtor, and it is not known what use was made of the proceeds. Because Wolery stood to benefit from any improvement in the value of American Airmotive which came about from the Debtor's prospective control of that company, it cannot be said that the loan proceeds were not intended to benefit Wolery, at least indirectly, at the time the loan was made. Therefore, the factor of non-receipt of the proceeds only slightly bolsters Wolery's position that he is an accommodation party rather than a co-maker.

The final test, the intent of the parties, was testified to only by Wolery. No other signatory to the Note was called as a wit-

ness, and the representative from the Bank was not questioned specifically with regard to Wolery's status. Wolery's testimony was inconclusive in that he indicated that he "signed with" the Debtor, that he received none of the proceeds, that the Debtor was to make the payments, that he was not sure he had actually made any payments on the note at the time the bankruptcy was filed, and that he did not believe Associates was obligated on the Note.

The evidence is not as strong as the Court might wish, but the Court will accept Wolery's testimony and will find that, on balance, Wolery has met his burden of proof. Accordingly, as between Wolery and the Debtor, the Court finds that Wolery is an accommodation maker or surety.

As an accommodation maker, Wolery's only right under state law is one of recourse against the Debtor as the party accommodated. Ohio Rev. Code § 1303.51(E). That means Wolery may assert a claim in the Debtor's case for reimbursement of monies he has paid on the Debtor's behalf. However, such claim is subject to the statutory and rule requirements of the Bankruptcy Act of 1898 (now repealed) and the former Rules of Bankruptcy Procedure. Specifically, former 11 U.S.C. § 57(i) (now repealed) and Rule 302 of the former Rules of Bankruptcy Procedure must be followed.

█ § 57(i) of the Bankruptcy Act of 1898 states:

Whenever a creditor whose claim against a bankruptcy estate is secured, in whole or in part, by the individual undertaking of a person, fails to prove and file that claim, that person may do so in the creditor's name, and he shall be subrogated to the rights of the creditor, whether the claim has been filed by the creditor or by him in the creditor's name, to the extent that he discharges the undertaking except that in absence of an agreement to the contrary, he shall not be entitled to any dividend until the amount paid to the creditor on the undertaking plus the dividends paid to the creditor from the bankrupt estate on the claim equal the amount of the entire claim of the creditor. Any excess received by the creditor shall be held by him in trust for such person.

It is undisputed that the Bank, as the creditor of this bankruptcy estate, did not file a proof of claim in this case, and that Wolery's claim was not filed in the name of the creditor who was known to Wolery, but was filed only in his own name. The issue is whether that defect bars Wolery from sharing in any distribution of funds of this estate to general unsecured creditors on account of his payment of the Bank's claim on the debtor's behalf.

The Court of Appeals for the Tenth Circuit has held that where a surety filed its claim in its own name rather than in the name of the creditors it had paid on a performance bond for the debtor, it would be appropriate to permit the surety to amend its claim by substituting the names of the creditors and detailing the dates and amounts it has paid on the debtor's behalf. *Fidelity and Deposit Company of Maryland v. Fitzgerald*, 272 F.2d 121 (10th Cir. 1959), *cert. denied*, 362 U.S. 919, 80 S.Ct. 669, 4 L.Ed.2d 738 (1960). Such amendment also relates back to the time the original claim was filed under general principles of federal civil procedure. *Fitzgerald*, 272 F.2d at 129–130; Fed.R.Civ.P. 15(c).

As the purpose of § 57(i) is to prevent two parties from receiving a distribution for the same claim and to require satisfaction of the creditor's claim in full prior to any payment from the bankruptcy estate to the surety, the Court believes the *Fitzgerald* court is correct in its analysis and resolution. Rule 304 of the former Rules of Bankruptcy Procedure authorizes Wolery to file a claim on behalf of the Bank, and the Court believes it is appropriate to permit Wolery to amend his claim to conform with the Rule.

With this finding the Court finds it unnecessary to consider the laches argument advanced by Wolery.

Consistent with the foregoing, the Trustee's objection to Wolery's claim is OVERRULED. Wolery is hereby granted leave

**864**

to amend his proof of claim to reflect the Bank as the creditor in this matter. Such claim shall, however, set forth Wolery's payments on the Note and shall identify Wolery by name and address as the party filing the claim on behalf of the Bank. If the Bank fails to file a claim superceding Wolery's claim on its behalf within thirty (30) days of notice to it of the amendment to Wolery's claim, and if the Trustee does not object to the amount asserted on the amended claim within that same time frame, Wolery's claim on behalf of the Bank will be allowed as amended as a general unsecured claim. Because the evidence established that Wolery paid the obligation represented by the Note after the commencement of the debtor's bankruptcy case, the Bank will be obligated to turn over to Wolery any distribution it receives in excess of the satisfaction of the Note. The Court further finds that Wolery is not entitled to reimbursement for interest he paid which was unmatured on the debtor's bankruptcy filing date of February 20, 1975. § 63(a)(1) of the Bankruptcy Act of 1898 (now repealed).

IT IS SO ORDERED.