**GREAT AMERICAN FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**AMERICAN FIDELITY COMPANY, et al., Defendants and Third Party Plaintiff,**

v.

**Jean T. HEADRICK, et al., Third Party Defendants.**

**DEPOSIT GUARANTY NATIONAL BANK, Intervenor,**

v.

**AMERICAN FIDELITY COMPANY, et al., Cross Defendants.**

**Civ. A. No. J88–0439(L).**

United States District Court, S.D. Mississippi, Jackson Division.

Nov. 9, 1989.

748

Walker W. Jones, III, William C. Brabec, Phelps, Dunbar, Jackson, Miss., for plaintiff.

Brunini Grantham Grower & Hewes, John E. Wade, Jr., Lead Counsel, Joshua W. Weiner, J. Collins Wohner, Jr., Butler, Snow Firm, Jackson, Miss., for CIT.

Sam E. Scott, Heidelberg, Woodliff Firm, Jackson, Miss., for Great Pacific.

Stephen P. Kruger, Upshaw, Williams, Biggers, Page & Kruger, Jackson, Miss., S. Wayne Easterling, Hattiesburg, Miss., William M. Holmes, Washington, D.C., for defendants.

Gary D. Thrash, Jackson, Miss., for Headrick and DeJure.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of Deposit Guaranty National Bank, cross-plaintiff and claimant, for summary judgment or, in the alternative, partial summary judgment as against cross-defendants H.O. Hughes (Hughes) and Hughes Texas Petroleum Corporation (Hughes Petroleum). These cross-defendants have responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.[1]

The undisputed facts as revealed by the present motion and the record in this cause demonstrate that H.O. Hughes and Hughes Petroleum, a corporation controlled by Mr. Hughes, executed three continuing guaranty agreements in favor of Deposit Guaranty for the benefit of DeJure Corporation (DeJure) in the total amounts of $60,000 and $85,000, respectively. On January 26, 1988, while the guaranties were in effect,[2] Deposit Guaranty advanced funds to DeJure Corporation, taking a security interest in collateral consisting of fixtures, equipment, accounts and inventory, and receiving a promissory note in favor of Deposit Guaranty in the principal amount of $89,499.56, with interest at the rate of 10.5% per annum from that date. DeJure also agreed, under the terms of the promissory note, that in the event of default, it would be liable for "all costs and expenses of collection, including reasonable attorney's fees and legal expenses."

---

1. Deposit Guaranty's motion was directed against Jean T. Headrick, DeJure Corporation, William M. Headrick, II, Hughes and Hughes Petroleum. By judgment dated November 6, 1989, the motion was granted as to the Headricks and DeJure Corporation leaving for consideration the motion as it pertains to Hughes and Hughes Petroleum.

2. Mr. Hughes executed a guaranty agreement in the amount of $60,000 on February 29, 1984. On that same date, Hughes Petroleum also executed a guaranty in the amount of $60,000.

Hughes Petroleum, on March 13, 1987, signed an additional guaranty agreement in the amount of $25,000. Each of these agreements provided for the guaranty of all present and future indebtedness of DeJure to Deposit Guaranty and further provided that the guaranties would remain in force until the guarantors provided Deposit Guaranty with notice in writing of their intent to discontinue their guaranties. It is undisputed in this case that the guarantors never provided Deposit Guaranty with any notice of discontinuance.

On April 3, 1988, the structure and contents of the business known as Lakeland Stationers, which was operated by DeJure, were destroyed by fire. The fire was the result of arson by one of the principals of DeJure, William M. Headrick, II.[3] The personal property which was destroyed included the collateral for DeJure's indebtedness to Deposit Guaranty. The security agreement executed by DeJure on January 26, 1988 contained the following provision:

> Debtor will at all times keep the collateral insured against all insurable hazards in amounts equal to the full cash value of the collateral. Such insurance shall be in such companies as may be acceptable to Bank, with provisions satisfactory to Bank for payment of all losses thereunder to Bank as its interest may appear and, if required, to deposit the policies with the Bank. Any money received by Bank under said policies may be applied to the payment of any indebtedness secured hereby, whether or not due and payable, or at Bank's option may be delivered by Bank to Debtor for the purpose of repairing or restoring the collateral. Debtor assigns to Bank all right to receive proceeds of insurance not exceeding amounts secured hereby, directs any insurer to pay all proceeds directly to Bank, and Bank is appointed Debtor's attorney-in-fact to endorse any draft or check made payable to Debtor in order to collect the benefits of such insurance. If Debtor fails to keep the collateral insured as required by Bank, Bank shall have the right to obtain such insurance at Debtor's expense, and add the cost thereof to other amounts secured hereby.

At the time of the fire, there was in effect a policy of fire insurance issued to DeJure by American Fidelity Company which provided coverage against loss of the structure and contents, including the collateral described in the security agreement.[4] And while Deposit Guaranty had, by virtue of the security agreement, obtained an assignment of the debtor's right to receive insurance proceeds, Deposit Guaranty had not been added by endorsement as either a loss payee or mortgagee under the policy.

Following the fire, DeJure defaulted under the terms of the promissory note and on October 20, 1988, Deposit Guaranty provided Hughes and Hughes Petroleum with notice of the default. DeJure remains in default, owing $89,499.56 in unpaid principal and $16,785.96 in unpaid interest through November 9, 1989. Further, Deposit Guaranty had incurred attorney's fees and legal expenses totalling $15,306.91 through June 30, 1989 as a result of DeJure's default under the terms of the note. Deposit Guaranty simultaneously filed claims in this action for insurance proceeds under the American Fidelity policy and for enforcement of the guarantors' obligations under their guaranty agreements. The insurer has denied that Deposit Guaranty is entitled to any of the insurance proceeds for the reason that the named insureds, Jean T. Headrick and DeJure, are not entitled to insurance proceeds.

On the present motion, Deposit Guaranty seeks judgment against Hughes and Hughes Petroleum based on the continuing guaranty agreements executed by those defendants. The Hughes defendants, however, assert that their liability under the guaranty agreements has been discharged due to an alleged breach of the bank's obligation to act as a reasonably prudent creditor which breach resulted in an impairment of the collateral. It is the Hughes defendants' contention that Deposit Guaranty's failure to take proper steps to have the bank named as a loss payee or mortgagee on the policy of fire insurance issued to DeJure constituted an impairment of the collateral; because Deposit Guaranty received only an assignment of the debtor's right to insurance proceeds, it, as a mere equitable lienholder, is subject to any defenses the insurer has as against the insured whereas a loss payee is not subject to such defenses. See *Nationwide Mutual Fire Ins. Co. v. Dungan*, 634 F.Supp. 674,

---

3. William M. Headrick, II and others have pled guilty to arson.

4. Coverage was provided in the amount of $400,000 for the structure and $243,000 for the personal property and improvements.

684 (S.D.Miss.1986), *aff'd*, 818 F.2d 1239 (5th Cir.1987) (equitable lienholder remains subject to any defenses insurer may assert against mortgagor).[5]

The court is of the view that omission of the bank to have itself named as loss payee under the policy was not an unjustifiable impairment of the collateral. The bank did not represent, in the security agreement or otherwise, that it would be named as a mortgagee in any insurance policy but rather reserved unto itself the option to determine what it deemed satisfactory in terms of insurance protection. Were there a complete lack of insurance coverage, the question would be presented in a different light. But in this case insurance was obtained in amounts adequate to cover the loss and Deposit Guaranty did obtain an assignment of the right to recover insurance proceeds. That in the court's view does not amount to an impairment of the collateral. More importantly, however, the court is of the opinion that the Hughes guarantors have contractually waived any right to claim release from their obligations of payment under the guaranty agreements on the basis of an impairment of collateral defense.

The agreements executed by these guarantors provided as follows:

> The Bank, may, one or more times in its judgment, grant extensions, *take and surrender securities*, accept composi-

tion, release or discharge indorsers, guarantors or other parties, *grant releases and discharges generally*, make changes of any sort whatever in the terms of its contract or manner of doing business with the debtor and with other parties and securities in relation thereto *without notice to the undersigned, such notice being hereby specifically waived* (emphasis supplied).

\* \* \* \* \* \*

> The Bank shall not be bound to exhaust its recourse against the Debtor or other persons or upon the securities it may hold for being entitled to payment from the undersigned of the amount hereby guaranteed.

Miss.Code Ann. § 75–3–606(1)(b) states that "(1) the holder discharges any party to the instrument to the extent that without such party's consent the holder (b) unjustifiably impairs any collateral for the instrument given...." To operate as a discharge, the unjustifiable impairment of collateral must be without the consent of the party claiming discharge. *Haney v. Deposit Guaranty Nat'l Bank*, 362 So.2d 1250, 1252–53 (Miss.1978). In *Haney*, the Mississippi Supreme Court, addressing this issue, made it clear that guaranty provisions for prior consent to the release, and hence impairment, of collateral are valid and operate to waive any impairment of collateral defense. There, the court observed as follows:

> [U]nder a simple "loss payable" or "open-mortgage clause" in an insurance policy payable to the mortgagee "as his interest may appear," the mortgagee is only entitled to receive the amount due him on his mortgage out of the funds recovered by or due to the insured.
>
> . . . . .
>
> On the other hand, where the "union" or "standard mortgage clause" is included in an insurance policy, the mortgagee is entitled to the proceeds of the policy, and the mortgagee's right to recover will not be invalidated by the act or negligence of the mortgagor of the insured's property. That is to say, no act or default of any person other than the mortgagee or those claiming the proceeds under the mortgagee shall affect the rights of the mortgagee to recover in case of loss.

*Hartford*, 313 So.2d at 407.

---

**5.** Deposit Guaranty argues that it could not have been named as loss payee or mortgagee on a policy covering personal property. However, the court is aware of no prohibition against the utilization of such clauses in insurance coverage for personal property. To the contrary it appears that the clauses are permissible. *See Hartford Fire Ins. Co. v. Associates Capital Corp.*, 313 So.2d 404 (Miss.1975); *cf.* Miss.Code Ann. § 83–13–9 (1972) ("union" or "standard mortgage clause" mandatory in fire insurance policies on buildings).

The bank also contends that under the law, even had it been named as a loss payee or mortgagee under the policy, it would not be in a better legal position than it now stands as an equitable lienholder of DeJure's rights under the policy since the right to payment of both is subject to any policy defenses available against the named insureds. However, the protection afforded a mortgagee depends on the type of clause used.

While relying on Section 75–3–606(1)(b) appellant overlooks (1) the unjustifiable impairment of collateral *must be without the consent of the party claiming discharge thereon, and (2) the very instrument on which she became a party has her consent that appellee might surrender any collateral without affecting her liability.*

*Haney,* 362 So.2d at 1252 (emphasis in original). The court reasoned that it would be "illogical" to rule that the bank had a duty not to impair the collateral, the breach of which would result in a release of the guarantors, when under the guaranty agreement, the bank could have released the collateral with impunity. *Id.* (citing *Etelson v. Suburban Trust Co.,* 263 Md. 376, 379, 283 A.2d 408, 410 (1971)). This conclusion is in accord with the Official Comment to U.C.C. § 3–606 which states that "[c]onsent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his discharge."

In the case at bar, the guarantor defendants consented in their guaranty to the bank's release of the collateral and thus even were the failure of Deposit Guaranty to have itself named as a loss payee under the debtor's insurance policy an impairment of the collateral, the defendants cannot claim entitlement to release from their guaranty obligations. Thus, they are bound by the terms of their guaranties, under which each agreed to be jointly and severally liable with DeJure and any other guarantors for the full amount of any indebtedness of DeJure up to the amount stated in the respective guaranties.

Based on the foregoing, it is ordered that Deposit Guaranty's motion for summary judgment as against defendants H.O. Hughes and Hughes Texas Petroleum Corporation is granted.

ORDERED.