ETELSON ET UX. *v.* SUBURBAN TRUST COMPANY

[No. 52, September Term, 1971.]

*Decided November 11, 1971.*

The cause was submitted on briefs to HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

Submitted by *Joel Savits* and *Barker & Savits* for appellants.

Submitted by *Michael G. Trainer* and *Duckett, Orem, Christie & Beckett* for appellee.

FINAN, J., delivered the opinion of the Court.

The appellants, Jerome A. and Marilyn F. Etelson, contest a decision of the Circuit Court for Montgomery County (Levine, J.) awarding a judgment in the amount of $2,455.07 against them, as the endorsers of a promissory note, and in favor of the appellee, Suburban Trust Company (Bank).

On July 31, 1969, the Bank made a loan to the J. M. Kalista Company, Inc., a Maryland corporation. Mr. Etelson, as the President of the Kalista Company, executed on behalf of the corporation a promissory note payable to the order of the Bank in the amount of $2,400.00. As security for this transaction the Bank accepted a security interest in a 1969 truck owned by the corporation, and additionally demanded that Mr. and Mrs. Etelson guarantee the payment of the note. Although a financing statement covering the truck was signed by Mr. Etelson on July 31, 1969, the Bank did not attempt to perfect its interest by filing until January 28, 1970, fifteen days after the Kalista Company had been declared bankrupt in the United States District Court for the District of Maryland.

At some time prior to March 5, 1970, and after default by the Kalista Company on the note, the Bank repossessed the truck. On April 6, 1970, the Trustee in Bankruptcy notified the Bank that in view of the late filing date of the financing statement, the Bank had lost the priority of its security interest. The Bank then released the truck to the Trustee in Bankruptcy who subsequently sold it at public auction for $1,400.00.

The Bank then brought an action on the note against the Etelsons, as the endorsers. The Etelsons attempting

to rely on §§ 3-606(1) (b), 9-207(1) and 9-302(1) of the Uniform Commercial Code (UCC), Maryland Code (1964 Repl. Vol.), Art. 95B, defended on the grounds that the Bank, by its negligence in failing to make a timely recording of the financing statement, had impaired the security and therefore could not recover from the endorsers, or in the alternative, that the sum of $1,-400.00 received from the sale of the truck by the Trustee in Bankruptcy, should be applied against the endorsers' indebtedness to the Bank.

The following significant language appears in the endorsement on the back of the note:

> "I/We, the endorser(s), do hereby jointly and severally (1) guarantee the payment of this note; (2) consent to any modification of the terms of the note or the release or exchange of any collateral without notice; and (3) authorize judgment by confession against each of us under the terms on the face of the note.
>
> /s/ Jerome A. Etelson
> /s/ Marilyn F. Etelson"

The trial court in rejecting the Etelsons' arguments, which were premised on the negligence of the Bank in its untimely filing of the financing statement, commented:

> "* * * the failure of the plaintiff [Bank] to record the instrument so as to make the collateral available for partial satisfaction is not available as a defense since the plaintiff [Bank] violated no duty which it owed to the defendants to record timely."

From a judgment in favor of the Bank in the amount of $2,454.07, the Etelsons appealed.

We have been referred to no Maryland cases, and have found none dispositive of the issue before us. However, there are cases from other jurisdictions upon which the appellants rely which generally hold that where a credi-

tor releases or negligently fails to protect security put in his possession or under his control by the principal debtor, the obligation of the endorser will be extinguished to the extent of the value of the security so released or left unprotected. *Shaffer v. Davidson*, 445 P. 2d 13 (Wyo. 1968) ; *Rose v. Homsey*, 197 N.E.2d 603 (Mass. 1964) ; *Nebraska State Bank v. May*, 220 N. W. 276 (1928) ; *Highland Inv. Co. v. Kansas City Computing Scales Co.*, 209 S. W. 895 (Mo.1919) ; *Redlon v. Heath*, 52 P. 862 (Kan. 1898) ; *Sullivan v. State*, 26 S. W. 194 (Ark. 1894) ; to similar effect, see 11 C.J.S. *Bills and Notes*, § 752, pg. 326, n. 87. It would further appear that Anderson's, *Uniform Commercial Code*, Vol. 3, § 3-606:8, pg. 129 (Second Edition), supports this view.[1]

In the instant case, however, the Etelsons by agreeing to the broad language of the endorsement limited the protection to which they might have otherwise been entitled under the UCC. It is clear from the express wording of the endorsement that the Bank could have released the collateral at any time without notice to the Etelsons and without the release affecting the Etelsons' obligation to pay. It would be illogical to rule that the Bank had a duty to file the financing statement and its failure to do so released the endorsers, when under the endorsement it could have released the collateral with impunity.

The UCC recognizes that there may be times where parties to an instrument may choose to alter the general provisions of the UCC to meet their particular purposes. Article 95B, § 1-102(3).[2] The appellants did not attack

---

1. "The failure to perfect a security interest under Article 9 is an 'impairing' of collateral within the discharge provision of Article 3. Consequently, where a creditor is given a chattel mortgage on an automobile to secure payment of a note, the chattel mortgage constitutes 'collateral' and if the creditor fails to file the mortgage with the result that it has no effect as against a subsequent purchaser of the automobile, there is a failure to preserve collateral within the meaning of Code, § 9-207, and an accommodation maker on the note is discharged under Code, § 3-606." Anderson, supra at 129-130.

2. Section 1-102(3) of the UCC states, "The effect of provisions of this article may be varied by agreement, except as other-

the propriety of the endorsement in the court below nor do they on appeal. Additionally, it appears from the record that the Bank was the party which sought the collateral as security for its own benefit and the taking of the chattel mortgage as security for the loan was not part of any inducement extended to the Etelsons to obtain their endorsement. In fact, as guarantors of "payment" of the loan their liability is indistinguishable from that of a co-maker. See Official Comment, Article 95B, § 3-416.

Under the facts of this case, the lower court was correct in holding that the Bank owed no duty to the Etelsons to record the financing statement and hence the failure to file did not affect their obligations as endorsers.

*Judgment affirmed, appellants*
*to pay costs.*

wise provided in this article and except that the obligations of good faith, diligence, reasonableness and care prescribed by this article may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable."