HURON COUNTY BANKING COMPANY, N.A., APPELLEE, *v.* KNALLAY; NICKOLI, APPELLANT.

(No. H-84-4—Decided June 29, 1984.)

*Richard Lynch,* for appellee.
*Robert W. Gentzel,* for appellant.

DOUGLAS, J. This matter is before the court on appeal from summary judgment of the Norwalk Municipal Court. The facts of the instant appeal are set forth below.

On January 12, 1982, defendant, Cynthia J. Knallay ("Knallay"), applied to appellee, Huron County Banking Company, N.A. ("the bank"), for a loan in the amount of $1,500. At the time of making her loan application, Rex Glover, the bank's loan officer, asked Knallay if she would have any collateral in order to secure the loan. At the time, Knallay indicated that her collateral would be a 1976 Pontiac Sunbird automobile. There is, however, a factual dispute as to whether Knallay owned the automobile at the time of requesting the loan or whether she would use the loan proceeds to purchase the auto. Regardless, there is no factual question that the automobile was to be used as collateral for her loan.

Knallay's original loan application was denied by appellee; however, appellee offered to loan Knallay the requested $1,500 provided that the 1976

Pontiac Sunbird be used as collateral and further provided that Knallay procure a qualified cosigner for the promissory note. Apparently, Knallay requested her father, appellant, Richard P. Nickoli, to cosign with her on the promissory note. Moreover, it is not disputed that appellant did sign the promissory note. Appellee was satisfied that appellant was a qualified cosigner, and, consequently, approved the loan to Knallay in the amount of $1,500. The record reveals that appellee disbursed the loan proceeds to Knallay by giving her a check in the amount of $1,496. This check was made payable solely to the order of "Cindy Knallay."

It also appears from the record that appellee did not secure the title to the collateral, i.e., the 1976 Pontiac Sunbird, nor did appellee obtain any specific identification, e.g., serial number, of the automobile prior to dispersing the loan proceeds to Knallay. The record further indicates that appellee did not obtain the title to the automobile which was to be used as collateral for the loan either prior to or subsequent to the disbursement of the loan proceeds.

Knallay failed to remain current on her loan payments to appellee. Appellee sought payment in full of the loan from appellant. Appellant refused. Appellee, as plaintiff, then commenced an action in the Norwalk Municipal Court for the payment of the loan, naming Knallay and appellant as defendants. Appellee subsequently filed an amended complaint, in which the amount due and owing on the loan was amended. Appellant filed his answer to the amended complaint; Knallay, however, failed to either file an answer to the amended complaint or to appear and otherwise defend her position. Both appellee and appellant filed motions for summary judgment.

The trial court, on December 29, 1983, entered a judgment, which stated:

"The court having heard testimony from the parties and upon the evidence adduced, the court having taken all of the testimony and evidence under consideration, it is the finding of this court that defendant's motion for summary judgment is not well taken, the court does not find that defendant Nickoli is discharged from liability on the note and plaintiff's motion for summary judgment is granted."

Subsequently, on January 3, 1984, the trial court entered the following judgment entry:

"The Defendant's Motion for Summary Judgment having been denied, and Plaintiff's motion for Summary Judgment against Richard Nickoli on the *Amended Complaint* having been granted, and Defendant Cynthia J. Knallay being in default of Answer or otherwise appearing to defend, it is

"ORDERED, ADJUDGED and DECREED that judgment is hereby rendered in favor of the Plaintiff Huron County Banking Company against Defendants Cynthia J. Knallay and Richard P. Nickoli, jointly and severally, in the amount of $1,347.92 plus interest at the rate of 18% per annum from July 25, 1983, to date of judgment, and interest at the rate of 10% thereafter, plus the costs of this action taxed at $19.90." (Emphasis *sic*.)

It is this judgment, which holds appellant jointly and severally liable for the full amount due and owing appellee, plus interest and court costs, from which appellant now appeals. For our review appellant presents the following two assignments of error:

"I. The trial court's denial of defendant-appellant's motion for summary judgment constituted reversible error as the evidentiary material demonstrates as a matter of law and without any dispute of material fact that plaintiff-appellee unjustifiably impaired the collateral for the promissory note, entitling plaintiff[*sic*]-appellant to a discharge of liability on the note.

"II. The trial court's granting of

plaintiff-appellee's motion for summary judgment constituted reversible error as the evidentiary material submitted shows the existence of genuine issues of material fact regarding the issues in plaintiff-appellee's claim for relief and that by reason of its unjustified impairment of collateral, plaintiff-appellee is not entitled as a matter of law to judgment against defendant-appellant."

Since the promissory note at issue herein is a writing signed by a maker containing an unconditional promise to pay a sum certain in money to order at a definite time, the applicable substantive law which governs this case is contained in R.C. Chapter 1303, commercial paper. See R.C. 1303.02 through 1303.09, inclusive. In view of the paucity of reported Ohio case law which discusses the applicable sections of the Revised Code, we have set forth the following discussion.

As the instant appeal is taken from the trial court's granting of summary judgment, we are mindful that a successful motion for summary judgment requires that there be no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 3 [24 O.O.3d 1]; *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64 [8 O.O.3d 73]. See Civ. R. 56(C). Upon our review of an award of summary judgment, the evidentiary materials submitted must be viewed in the light most favorable to the opponent of the summary judgment motion. *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, 433 [21 O.O.3d 267]; *Jackson* v. *Kings Island* (1979), 58 Ohio St. 2d 357, 360 [12 O.O.3d 321]. With these procedural guidelines foremost in mind, we proceed with our analysis of appellant's substantive claims.[1]

The face of the note at issue provides, in pertinent part[2]:

"INDIVIDUAL LOAN    No.180-610-2
"OR INSTRUMENT ARISING OUT
"OF CONSUMER LOAN
"$1,733.04  Norwalk, Huron, Ohio, January 14, 1982. Eighteen (18) Months ---- after date for value received, I, we, or either of us promise to pay to the order of THE HURON COUNTY BANKING COMPANY, N.A. at its office, the sum of One thousand seven hundred thirty three and 04/100 Dollars ($1,733.04) payable in installments of not less than $96.28 not later than February 25, 1982, and $96.28 at regular monthly intervals thereafter on the 25th of ea. month until this note is paid in full. Description of Collateral: DPL/1976 Pontiac Sunbird.

    "* * *

    "1.s/Cynthia J. Knallay
    "2.
    "3.s/Richard Nickoli
    "4."

Appellant's contention is essentially

---

[1] We note that in the instant case, appellant and appellee filed motions for summary judgment in the trial court. Necessarily, each of the parties argued in support of his respective motion that no genuine issue of material fact existed. When opposing parties file motions for summary judgment, the admission of each party that there is no factual issue is limited to the purposes of the moving party's motion, and such assertion by the movant may not be applied to the adversary's similar motion. The filing of cross-motions for summary judgment does not establish the absence of an issue of fact. See *M. Snower & Co.* v. *United States* (C.A. 7, 1944), 140 F. 2d 367, 369; *Morlan* v. *Durland Trust Co.* (1952), 127 Colo. 5, 252 P. 2d 98; Annotation, Proper Procedure and Course of Action by Trial Court, Where Both Parties Move for Summary Judgment (1954), 36 A.L.R. 2d 881; 32 Ohio Jurisprudence 2d (1975) 463-466, Judgments, Section 911.

[2] For a copy of the entire note, see Appendix A at page 118.

two-fold. First, appellant asserts that he signed the note as an accommodation party and, as such, is entitled to have his liability on the note discharged to the extent that appellee has impaired the collateral. Second, appellant asserts that appellee has failed to perfect its security interest in the collateral and, thus, the collateral has been impaired. Conversely, appellee contends that appellant signed the note as a principal maker, and, accordingly, is liable as such for the outstanding amount of the promissory note, notwithstanding and regardless of whether the collateral has, in fact, been impaired. Appellee, however, does not admit that it has impaired the collateral for the loan in question.

We begin our analysis by stating that "[n]o person is liable on an instrument[3] unless his signature appears thereon." R.C. 1303.37(A). There is no factual dispute in the instant case regarding whether appellant's signature appears on the instrument. Although appellant's signature does, in fact, appear on the instrument, the question which remains concerns the extent of appellant's liability. A "maker" engages that he will pay the instrument according to its tenor (R.C. 1303.49), while an "indorser" engages that he will pay the instrument according to its tenor only upon dishonor and any necessary notice of dishonor and protest, R.C. 1303.50 (A).

A signature on an instrument is cloaked with the presumption that unless otherwise clearly indicated, the signature is an indorsement. R.C. 1303.38. See *Alves* v. *Baldaia* (1984), 14 Ohio App. 3d 187. In the Official Com-

ment to R.C. 1303.38, however, we are instructed that the indication that a signature is made in a capacity other than an indorser must be clear without reference to anything but the instrument itself. The Official Comment further continues that the capacity in which a signature is made may be found in usage or custom:

"Thus by long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note."

Thus, in light of this practice, when a party signs a note in the lower right-hand corner, that party will be regarded as a maker and not an indorser. *Ritzau* v. *Warm Springs West* (C.A. 9, 1979), 589 F.2d 1370, 1378; *Bankers Trust of South Carolina* v. *Culbertson* (1977), 268 S.C. 564, 235 S.E. 2d 130. Applying this legal principle to the instant appeal, there is no escaping the obvious fact that appellant's signature appears on the note and is located beneath his daughter's signature in the lower right-hand corner of the instrument. Accordingly, the conclusion which must be drawn from the law and the facts is that appellant is a maker rather than an indorser of the promissory note at issue herein.

Having so held, the next question with which we are faced concerns appellant's status as a maker, *i.e.,* was he a principal maker or an accommodation maker? In determining this issue, we note that R.C. 1303.51(A) states that "[a]n accommodation party is one who signs the instrument *in any capacity for*

---

[3] The term "instrument," as used herein, means a "negotiable instrument." R.C. 1303.01(A)(5). To be a "negotiable instrument," there must be: (1) a writing (2) signed by the maker (3) containing an unconditional promise or order to pay (4) a sum certain (5) in money (6) on demand or at a definite time

and (7) payable to order or to bearer. R.C. 1303.03(A).

A "note," as long as it is not a certificate of deposit, is a writing which complies with the above definition of a negotiable instrument. R.C. 1303.03(B)(4). See R.C. 1303.02 through 1303.09, inclusive, for the definitions of the above requirements of negotiability.

the purpose of lending his name to another party to it." (Emphasis added.) *Barylak* v. *Jordan* (1980), 156 Ga. App. 508, 274 S.E. 2d 846, 847. Simply because a party signs a note as a maker does not preclude that party from being an accommodation party to that note. *Godfrey State Bank* v. *Mundy* (1980), 90 Ill. App. 3d 142, 412 N.E. 2d 1131, 1134; *Fithian* v. *Jamar* (1979), 286 Md. 161, 410 A. 2d 569, 572. In other words, a party, although a maker, may very well be an accommodation maker. This is certainly clear from the pertinent text of the first "Official Comment" to R.C. 1303.51:

"Division (A) [of R.C. 1303.51] recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He [the accommodation party] differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. *His obligation is therefore determined by the capacity in which he signs. An accommodation maker* * * * *is bound on the instrument without any resort to his principal,* while an accommodation indorser may be liable only after presentment, notice of dishonor and protest." (Emphasis added.)

Similarly, Official Comment number four to R.C. 1303.51, states in relevant part:

"As a surety, the accommodation party is not liable to the party accommodated; but *he is otherwise liable on the instrument in the capacity in which he has signed.*" (Emphasis added.)

Thus, if a party signs as an accommodation maker, said party is liable on the instrument in the capacity of a maker; if, however, a party signs a note as an accommodation indorser, that party's liability on the instrument is that of an indorser.

As we previously stated, it is our holding that appellant signed the prom-issory note in question as a maker. Although an individual is a maker, "[w]hether an individual is an accommodation party presents a question of fact; the trial court should focus on the intention of the parties as reflected by the language of the pertinent instrument and by the surrounding circumstances." *Campo* v. *Maloney* (1982), 122 N.H. 162, 442 A. 2d 997, 1001. See *Mundy, supra,* at 1134.

In attempting to prove one's status as an accommodation party, R.C. 1303.51(C) permits oral proof, unless, however, such proof is to be admitted against a holder in due course who took the instrument without notice of the accommodation. Presumptively, the term "oral proof" as used by the drafters of the Uniform Commercial Code as subsequently adopted by the legislature also includes written proof extrinsic to the instrument. White & Summers, Uniform Commercial Code (2 Ed. 1980), Section 13-13, at 521. One respected commentator has substituted the term "parol evidence" for the code's term of "oral proof." Anderson, Uniform Commercial Code (2 Ed. 1971), Section 3-415:10. See *Swida* v. *Adams* (1976), 138 Ga. App. 347, 226 S.E. 2d 139, 140. Further, it has been held that a person who claims that he signed the instrument as an accommodation maker has the burden of proving that status. *Commerce Union Bank* v. *Davis* (Tenn. App. 1978), 581 S.W. 2d 142, 144. See *Caldwell* v. *Stevenson* (Tex. Civ. App. 1978), 567 S.W. 2d 278, 280. Clearly, appellee had notice of appellant's signing in a special capacity, and parol evidence is, therefore, admissible to prove appellant's status as an accommodation party.

Some of the factors which may be considered in determining the status of a maker are: (1) the location of the signature on the note, (2) the language of the note itself, (3) whether the co-maker received any of the loan pro-

ceeds, (4) and the intent of the parties. See Annotation, Who is an Accommodation Party Under Uniform Commercial Code § 3-415 (1979), 90 A.L.R. 3d 342. This set of determining factors, however, is in no way meant by us to be exhaustive.

The facts of the case *sub judice* indicate that the loan proceeds were dispersed solely to Cindy Knallay; that the check for the loan proceeds was made payable solely to Cindy Knallay; that the check was delivered solely to Cindy Knallay; that the deposition of appellant states that it is his position that he signed the promissory note as an accommodation party; and that the relevant language of the note states, "I, we, or either of us promise to pay * * *." In light of these facts and the applicable law, there is a genuine issue of material fact regarding the question of whether appellant is a principal maker or an accommodation maker to the promissory note herein. See *Adams, supra.*

If appellant is found to be an accommodation maker by the factfinder, the next question becomes whether appellee unjustifiably impaired the collateral. There is no factual issue that a 1976 Pontiac Sunbird was to be the collateral for the loan. The promissory note itself, the deposition of Mr. Glover, appellant's deposition, the security agreement, and appellee's internal forms all reveal this fact. Whether appellee unjustifiably impaired the collateral is of paramount importance in view of R.C. 1303.72, which states in pertinent part:

"(A) The holder discharges any party of the instrument to the extent that

without such party's consent the holder:

"* * *

"(2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

This defense would be available to appellant if he is found to be an accommodation maker:

"The words 'any party to the instrument' remove an uncertainty arising under the original section. *The suretyship defenses here provided are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker* or acceptor known to the holder to be so." (Emphasis added.) Official Comment number one to R.C. 1303.72.

See *Wohlhuter* v. *St. Charles Lumber & Fuel Co.* (1975), 62 Ill. 2d 16, 338 N.E. 2d 179, 182; *Beneficial Finance Co.* v. *Lawrence* (N.D. 1980), 301 N.W. 2d 114, 116.

Admittedly, there is also a factual discrepancy regarding whether Knallay already owned the collateral or whether she was going to use the loan proceeds to purchase the collateral. This factual issue concerns the type of security interest which appellee would have, *i.e.*, purchase money or non-purchase money security interest. See R.C. 1309.05.[4] This issue, however, is neither relevant nor material concerning the question of whether the collateral was unjustifiably impaired. In determining whether the collateral has been unjustifiably im-

---

[4] A security interest is a "purchase money security interest" to the extent that it is:

"(A) taken or retained by the seller of the collateral to secure all of [or] part of its price; or

"(B) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." R.C. 1309.05.

paired, R.C. Chapter 1309, secured transactions, should be consulted.[5]

The record indicates that a factual question exists as to whether appellee perfected its security interest in the collateral. The failure to perfect a security interest has been held to be an unjustifiable impairment of collateral. *Farmers State Bank* v. *Cooper* (1980), 227 Kan. 547, 608 P. 2d 929, 936; *In re*

---

[5] "Perfection of collateral" is outlined in R.C. 1309.21, 1309.22, 1309.23, and 1309.24. In the specific case of a security interest in a motor vehicle, see R.C. 4505.13.

[6] For further authority that a failure to perfect a security interest is an unjustifiable impairment of the collateral, see *Executive Bank of Ft. Lauderdale* v. *Tighe* (1978), 66 App. Div. 2d 70, 411 N.Y.Supp. 2d 939, 944, modified (1981), 54 N.Y.2d 330, 445 N.Y.Supp. 2d 425. *North Bank* v. *Circle Invest. Co.* (1982), 104 Ill. App. 3d 363, 432 N.E. 2d 1004, 1007-1008.

We do recognize, however, that consent to the impairment of collateral, *e.g.*, the collateral's release or reduction, may be given by the parties to the note. Specifically, Official Comment number two to R.C. 1303.72 states:

"Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge."

Accordingly, if a person consents to the partial or complete release of the collateral by the holder of the note, that party cannot then claim the benefit of the pro tanto discharge provided for in R.C. 1303.72(A). See *Fireman's Fund Ins. Co.* v. *Joseph J. Biafore, Inc.* (C.A. 3, 1975), 526 F. 2d 170, 175-176; *Executive Bank of Ft. Lauderdale* v. *Tighe* (1981), 54 N.Y.2d 330, 445 N.Y.Supp. 2d 425, 428-429; *Tolzman* v. *Gwynn* (1974), 22 Md. App. 564, 324 A. 2d 179, 183-184; *Etelson* v. *Suburban Trust Co.* (1971), 263 Md. 376, 283 A. 2d 408, 410. Specifically, *Etelson* and *Tighe, supra,* hold that when and where a person signed a promissory note which contained a provision consenting to the release and/or reduction of the collateral,

*Estate of Voelker* (Iowa 1977), 252 N.W. 2d 400, 403; *Shaffer* v. *Davidson* (Wyo. 1968), 445 P. 2d 13, 15. See Anderson, *supra,* at Section 3-606:8. See, also, Annotation, What Constitutes Unjustifiable Impairment of Collateral, Discharging Parties to Negotiable Instrument, Under UCC § 3-606(1)(b) (1979), 95 A.L.R. 3d 962.[6]

We further note that a party claim-

that person's liability was not discharged pro tanto because of the noteholder's failure to perfect a security interest in the collateral.

In *Etelson, supra,* the note contained the following language: "I/We, the endorser(s), do hereby jointly and severally * * * (2) consent to any modification of the terms of the note or the release or exchange of any collateral without notice." *Etelson, supra,* at 409-410. In light of this language contained in the note, the *Etelson* court held, at 410:

"In the instant case, however, the Etelsons by agreeing to the broad language of the endorsement limited the protection to which they might have otherwise been entitled under the UCC. It is clear from the express wording of the endorsement that the Bank could have released the collateral at any time without notice to the Etelsons and without the release affecting the Etelsons' obligation to pay. It would be illogical to rule that the Bank had a duty to file the financing statement and its failure to do so released the endorsers, when under the endorsement it could have released the collateral with impunity."

Similarly, in *Tolzman, supra,* at 183, the signers of the note consented that the "Collateral may be exchanged; surrendered or sold from time to time." Likewise, in *Tighe, supra,* at 428-429, the promissory note provided that:

"Additions to, reductions or exchanges of * * * the Collateral * * * may from time to time be made without affecting the provisions of this note,"

and that:

"All parties liable for the payment or collection hereof * * * consent to * * * the release of any obligor or collateral or any part thereof, with or without substitution."

The note at issue in the case *sub judice,* although it may contain many encompassing

ing to be released by an impairment of collateral must establish the fact that the collateral has been impaired by a preponderance of the evidence. *Maloney, supra,* at 1002; *United States* v. *Unum, Inc.* (C.A. 5, 1981), 658 F. 2d 300, 303-304, rehearing denied (1981), 664 F. 2d 289. If the factfinder determines that the collateral has been impaired, the accommodation party may be discharged pro tanto, *i.e.,* the extent of the discharge is limited to the extent of the collateral's impairment. *Provident Bank* v. *Gast* (1979), 57 Ohio St. 2d 102, 109 [11 O.O.3d 284]; *Voelker, supra,* at 402-403. See *Mikanis Trading Corp.* v. *Block* (1977), 59 App. Div. 2d 689, 398 N.Y.Supp. 2d 679.

In conclusion, we note that it is essential for a party, although a maker, to be an accommodation maker or a surety in order to claim the benefit of R.C. 1303.72(A)(2). *Hooper* v. *Ryan* (Tex. Civ. App. 1979), 581 S.W. 2d 237, 238-239; *Davis, supra,* at 144; *Unum, supra,* at 304.

As it is our determination that genuine issues of material fact exist regarding whether appellant is an accommodation maker and, if so, whether appellee has unjustifiably impaired the collateral, appellant's first assignment of error is not well-taken and appellant's second assignment of error is well-taken. The summary judgment of the Norwalk Municipal Court in favor of appellee and against appellant[7] must be, and the same hereby is, reversed. This cause is remanded to said court for further proceedings according to law.

*Judgment reversed and*
*cause remanded.*

HANDWORK and RESNICK, JJ., concur.

---

statements, consents, and waivers, does not contain a provision whereby the signatories consent to the impairment of the collateral. The closest which this note comes to so providing is the following language therefrom:

"For the purpose of enforcing the payment of this obligation, the said holder shall have full power and authority to sell, assign, collect, compromise, transfer, and deliver all of the said collateral, whether original or additional, or so much thereof as may be requisite or as the holder may deem advisable, and apply the proceeds, or so much thereof as may be necessary, to the payment of this note, and the necessary expenses and charges in selling the same, and the balance of the proceeds, if any, to the payment of any other liability of the depositor of the said collateral to the holder, and render the balance, if any, to the depositor of said collateral. Such sale may be made wherever the said holder may direct, and may be public or private, or both, with or without advertisement, and with or without notice to or demand on the makers or the depositors of the said collateral, or any of them, understood and agreed, however, that the holder shall not be compelled to resort first to the collateral hypothecated for the security of this obligation, but may at its election require said obligation to be paid by any maker or makers hereon. This note shall bear interest at highest legal contract rate after maturity until paid."

As can be readily seen, this provision has no application unless the collateral is to be used "[f]or the purpose of enforcing the payment of the obligation." Further, this provision provides that the makers of the note do waive notice of the sale of the collateral if the collateral is to be sold for the purpose of enforcing payment of the obligation. The note at issue herein, however, does not contain provisions of consent and/or waiver whereby the holder of the note may impair the collateral at the holder's own discretion.

[7] Of course, the judgment in favor of appellee and against Knallay remains unaffected.