**In re FREEWERTH ENTERPRISES, INC., Debtor.**

**Richard A. BAUMGART, Trustee, Plaintiff,**

**v.**

**HOBART CORPORATION, et al., Defendants.**

**Bankruptcy No. B89–05031.**
**Adv. No. B90–0064.**

United States Bankruptcy Court, N.D. Ohio, E.D.

March 6, 1991.

James Barrow, Cleveland, Ohio, for plaintiff.

Stephen M. Darlington, Ziegler, Metzger & Miller, Cleveland, Ohio, for Huntington Nat. Bank.

Richard J. French, Asst. U.S. Atty., Cleveland, Ohio, for U.S.

Howard Hershman, Toledo, Ohio, for Metropolitan Bank of Lima, Ohio.

Kate A. Oklok, Asst. Atty. Gen., Columbus, Ohio, for State of Ohio.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

### I.

In this matter the Plaintiff, Richard A. Baumgart (Trustee), and the Defendant, Huntington National Bank (HNB), have filed cross motions for summary judgment regarding the complaint allegations set forth in Count I of the above-styled adversary proceeding. In pursuance of this effort, the parties have entered into the following stipulations of fact:

It is stipulated and agreed by and between the Plaintiff, Richard A. Baumgart, Trustee, and the Defendant, Huntington National Bank ("HNB"), that if witnesses were sworn and testified in the above entitled Adversary Proceeding and any available documentary proof introduced, that the following facts would thereby be established or would be testified to, and the parties hereto agree to the same, the evidence of which, except for this agreement, need not be adduced upon trial.

1. That Plaintiff, Richard A. Baumgart, is the Trustee in the bankruptcy case of Freewerth Enterprises, Inc. ("Freewerth"), the Debtor herein, which case was commenced by the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 6, 1989, and in which case an Order for Relief was entered.

2. That the within Adversary Proceeding is a Core Proceeding pursuant to 28 U.S.C. § 157, and the within Bankruptcy Court has jurisdiction over the within Adversary Proceeding.

3. That the Debtor at all times relevant to the within Adversary Proceeding was a corporation which designed, constructed and installed custom cabinetry and restaurant equipment.

4. That prior to the year before the commencement of the within bankruptcy case, HNB made one or more commercial loans to the Debtor, and the Debtor, to evidence such loans, executed one or more promissory notes (the "Promissory Notes") payable to HNB. All of the foregoing loans were made in the ordinary course of business or financial affairs of the Debtor and HNB, and according to ordinary business terms.

5. On September 10, 1985, the Debtor executed a security agreement granting to HNB a security interest in the inventory and receivables of the Debtor to secure payment of the Promissory Notes.

6. On September 10, 1985, the Debtor executed financing statements relating to the aforementioned security interest.

7. That on or about September 16, 1985, HNB filed the aforementioned financing statements with the Secretary of State of Ohio and the Recorder of Cuyahoga County, Ohio, which filings did not effect a perfection of the aforementioned security interest, as the Debtor's sole place of business in Ohio at all pertinent times was located in Summit County, Ohio.

8. HNB failed to perfect the aforementioned security interest by failing to file a financing statement with the Recorder of Summit County, and such security interest is unperfected as against Plaintiff and the Debtor. HNB claims

lack of perfection constitutes an unjustifiable impairment of collateral for the promissory notes given by the Debtor, against whom Harry Friedman had a right of recourse, pursuant to Ohio Revised Code, §§ 1303.67 and 1303.72(A)(2).

9. That Harry Freedman was the president and sole shareholder of the Debtor at all times during the year prior to the filing of the within bankruptcy case, and was at all times during the year prior to the filing of the within bankruptcy case an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(30).

10. More than one year prior to the commencement of the within bankruptcy case, Harry Freedman personally guaranteed in writing all of the Debtor's obligations to HNB, including the payment by the Debtor of the Promissory Notes. A photographic reproduction of the guarantees of Harry Freedman are attached hereto as Exhibits "A" and "B".

11. That during the year prior to the commencement of the within bankruptcy case, the Debtor transferred to HNB the aggregate sum of $61,434.84 in partial satisfaction of its outstanding obligation on the Promissory Notes, $18,678.96 of which was transferred during the 90 days immediately prior to the bankruptcy and $42,755.88 of which was transferred between 90 days and one year prior to the bankruptcy.

12. The parties agree that the aforementioned transfers by the Debtor to HNB of $61,434.84 during the year prior to the commencement of the within bankruptcy case satisfies all of the elements of a preferential transfer required to be proved by Plaintiff to establish a *prima facie* case as set forth in 11 U.S.C. § 547(b).

13. During the period between 90 days and the year prior to the commencement of the within bankruptcy case, $10,-066.68 of the $42,755.88 in payments made by the Debtor to HNB in payment of indebtedness incurred by the Debtor in the ordinary course of business or financial affairs of the Debtor and HNB, and pursuant to the terms of the Promissory Notes.

14. Plaintiff disputes that 11 U.S.C. § 547(c)(2) applies to the within transaction.

15. On December 6, 1989, the outstanding principal balance on the Promissory Notes was $206,666.60.

16. On December 6, 1989, the value of HNB's collateral was $10,685.95.

17. At all times during the year preceding the filing of the within bankruptcy case, the outstanding principal balance on the Promissory Notes was not less than $206,666.60.

18. At all times during the year preceding the filing of the within bankruptcy case, if HNB liquidated its collateral, HNB's deficiency balance would not be less than $61,434.84.

## II.

The Trustee's Complaint seeks to have the Court avoid a lien, to recover an avoidable preference, to sell personal property, and to determine rights, priorities and claims to the proceeds thereof. In view of the above stipulations, the Trustee alleged that this failure to properly perfect the security interest is deemed to have been a transfer made immediately before the filing of the bankruptcy petition, pursuant to § 547(e)(2)(C) of the Code [11 U.S.C. § 547(e)(2)(C)].

In support of its motion for summary judgment, the Trustee asserts that HNB has stipulated to all of the *prima facie* elements under § 547(b) of the Bankruptcy Code [11 U.S.C. § 547(b)] to allow it to avoid a prepetition transfer of $18,678.96 as having been preferentially made by the Freewerth Enterprises, Inc. (Debtor) to HNB during the 90–day period prior to the commencement of this case. (Stips. 11 and 12). As the HNB has offered no § 547(c) exception to that transfer, the Trustee seeks its avoidance under § 547(b). While contending that HNB failed to perfect its security interest respecting the $18,678.96, the Trustee asserts that the requirements of § 547(e)(2)(C) provide a further basis for its avoidance. Section 547(e)(2)(C) provides

that any transfer of a security interest not perfected prior to petition filing will be treated as if it was made contemporaneously with the bankruptcy filing. 11 U.S.C. § 547(e)(2)(C). Thusly, the Trustee claims that an avoidable preferential transfer under § 547(b) has been established.

The Trustee also contends that an avoidable transfer occurred with respect to all transfers made by the Debtor to HNB within the one year period prepetition as the Debtor's president and sole shareholder, Harry Freedman, personally guaranteed the debt owed to HNB causing him to be an "insider" as that term is defined at § 101(30) of the Bankruptcy Code. See, Stip. No. 9. With regard to an amount of $61,434.84 transferred by the Debtor to HNB during the one year period prior to petition filing, the parties have stipulated that each required element of § 547(b) has been satisfied to establish an avoidable transfer. See, Stip. No. 12.

In response to the subject complaint allegation and the Trustee's motion for partial summary judgment, HNB filed its motion for summary judgment. In support of its motion, HNB asserts that an insider recovery against HNB is inappropriate as the payments received within the preferential period were made in the ordinary course of business. Secondly, HNB argues that its failure to perfect its security interest operates as an unjustified impairment of the collateral securing the Debtor's obligation to HNB, thereby discharging the insider-guarantor and preventing recovery against HNB for payments received during the preference period.

### III.

Section 550 of the Bankruptcy Code provides that:

—[T]he trustee may recover, for the benefit of the estate, the property transferred or—the value of such property, from—

1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

2) any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a)(1) and (2).

Section 547(e)(2)(C) of the Code provides:
—[A] transfer is made—
(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or
(ii) 10 days after such transfer takes effect between the transferor and the transferee.

Section 547(b)(4)(B) allows the trustee to avoid any transfer of an interest of the debtor in property which was made between ninety days and one year prior to petition filing where the creditor, at the time the transfer was made, was an insider. Under § 101(30) of the Code, the definition of an "insider" includes a director, officer, or person in control of the debtor where the debtor is a corporation.

In the matter at bar, Harry Freedman (Freedman), is the Debtor's sole shareholder and guarantor on the obligation owed by the Debtor to HNB. By reason of his position of control, Freedman is an "insider" pursuant to § 101(30). As guarantor on the subject indebtedness, Freedman also is a creditor of the Debtor as a guarantor has a contingent liability on the obligation in the event of a default by the Debtor to the transferee HNB. As an insider guarantor, the preferential reach back period of recovery extends to one year prior to petition filing, as provided under § 547(b)(4)(B). Further, as an insider guarantor, any payment made by the Debtor to HNB within the aforesaid preferential period necessarily benefits Freedman as guarantor, as such payments would diminish his contingent liability on the debt owed to HNB.

HNB asserts that Freedman is not a creditor of the Debtor nor a guarantor on the obligation owed by the Debtor to HNB. In support of that position, HNB states that Freedman's contingent liability on the note as guarantor was discharged by reason of HNB's failure to perfect its secured interest on the note. Citing U.C.C. 3–606, HNB argues that this failure to perfect its

security interest on the debt caused an unjustifiable impairment of collateral and thereby discharged Freedman's obligation as guarantor on the note. Further, HNB contends that recovery of the payments made by the Debtor is not appropriate from HNB since its failure to perfect substantially impaired Freedman's right of recourse against the collateral due to an intervening lien of the Industrial Commission of Ohio's Bureau of Workers' Compensation.

## IV.

The principal issue for determination is whether the Trustee is entitled to recover payments made by the Debtor during the one year preferential period. In resolving that issue, the Court must first determine whether (1) a guarantor is discharged on an obligation where the secured party fails to perfect its security interest and (2) whether a transferee can successfully deny recovery on an avoided preference and assert impairment of collateral as a defense where the party asserting impairment of collateral is also the party that failed to perfect its security interest.

Herein, the parties have stipulated to the existence of all elements required to avoid a prepetition transfer under § 547(b). As indicated above, HNB argues that a portion of the prepetition transfers were made in the ordinary course of the Debtor's business and were therefore excepted from recovery pursuant to § 547(c)(2).

## V.

■ In matters concerning the avoidability of transfers, generally, the burden of proof is upon the party who seeks the avoidance under § 547(b). Where a § 547(c) exception to avoidance is claimed, however, the party asserting the exception shoulders the burden of proof. In either instance the burden must be borne by a preponderance of the evidence. See, 11 U.S.C. § 547(g).

HNB's contention that its failure to perfect its security interest is a valid defense to the Trustee's avoidance of the security interest transfer is not well founded. As

security perfection matters are generally the subject of nonbankruptcy law, an examination of applicable state law is required. In fact, the subject guaranties, attached to the parties' stipulations, indicate that the guaranties are to be construed in accordance with Ohio law. As provided under U.C.C. 3–601:

—the extent of the discharge of any party from liability on an instrument is governed by—(d) impairment of right of recourse or of collateral (Section 3–606).

Promissory notes are negotiable instruments as the term "instrument" is defined under U.C.C. 3–102. In determining whether impairment has occurred with respect to recourse or on collateral, U.C.C. 3–606 must be examined which provides:

A) The holder discharges any party of the instrument to the extent that without such party's consent the holder....

(2) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse. [U.C.C. 3–606].

The Official Comment to U.C.C. 3–606 explains the language in U.C.C. 3–606(1) by providing:

1. The words "any party to the instrument" remove an uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are secondarily liable, but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so.

■ The above-quoted statutory language is clear to state that the defense offered in U.C.C. 3–606 is "available to any party who is in the position of a surety ...". Certainly, HNB is not in the position of a surety on the subject note. In fact, HNB is the holder of the instrument. As such, the defense of impaired collateral is not available to HNB on this basis, and avoidance of the unperfected security interests are avoidable transfers, recoverable

under § 550 of the Bankruptcy Code, and are within the one year preferential period by operation of § 547(e)(2)(C) [11 U.S.C. § 547(e)(2)(C) ] which provides:

(2 ...[A] transfer is made—

immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

■■■■■ Another important reason exists to deny HNB the defense proposed under U.C.C. 3–606 regarding an unjustifiable impairment of collateral. HNB is the holder of the instrument who, for whatever reason, failed to perfect its security interests in the subject collateral. Now that it is in the position of defending against the avoidance of the transfer of the security interests, it should not be allowed to profit by its failure to perfect by asserting impairment of collateral as an affirmative defense in this action. To condone this effort by HNB would be grossly inequitable. Simply stated, HNB was derelict in its duties as a secured creditor, as required by U.C.C. 9–207,[1] and now should not be allowed to profit from its dereliction of duty. *Arguendo,* to the extent that the Bank's unjustifiable impairment of security may have caused a discharge of Friedman's suretyship, such a discharge is merely, *pro tanto,* that is, only to the extent of any impairment to the collateral. *See, Huron Co. Banking Co. v. Knallay,* 22 Ohio App.3d 110, 489 N.E.2d 1049 (1984); *Provident Bank v. Gast,* 57 Ohio St.2d 102, 109, 386 N.E.2d 1357 (1979). Since only a partial discharge could arguably be achieved by Friedman, HNB's reliance upon provisions of U.C.C. 3–606 [Ohio Rev.Code § 1303.72(A)(1) ] is misplaced. *See also, U.S. v. Willis,* 593 F.2d 247, 260–61 (6th Cir.1979). The duty of the holder of the security must exercise reasonable care in preserving the collateral and such duty cannot be disclaimed by agreement be-tween the parties. U.C.C. 1–102(3). Moreover, notwithstanding the characterization of any possible discharge of HNB's guarantor (Freedman) due to HNB's unjustifiable impairment of collateral, the security agreement between HNB and the Debtor, remains valid. See, U.C.C. 9–201. In other words, the HNB's failure to properly perfect its security did not render the security interest void *ab initio.*

■■■■■ The Trustee correctly argues that the Bank had until December 6, 1989 to perfect its security interest, since the Trustee did not become an intervening lienholder until the date of petition filing. *See,* 11 U.S.C. § 544. The Bank simply failed to do so. The failure of a secured party to perfect its security interest does not in itself constitute an unjustifiable impairment of collateral as such impairment occurs only when the parties' conduct allows third parties to obtain a superior interest in the collateral. This has not occurred in the present action. *I.T.T. Industrial Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1340 (N.D.Ill.1987).

■■■ It is undisputed that the subject security agreement was effective between the parties until the date of petition filing. The intervention of the Trustee, as lienholder, occurred only at the petition date. Under the Uniform Commercial Code, no provision provides for the discharge of a guarantor premised upon a hypothetical event. Rather, an actual intervening event must occur which causes impairment to the collateral. *I.T.T., supra,* at 1340. At bar, the earliest that the guarantor could have asserted a *pro tanto* discharge was the petition date and not sooner. At any rate, no impairment has been demonstrated by the surety, and the guaranty was fully in effect at the time of petition filing. Finally, the terms of the guaranty which are in force between HNB and Freedman are clear to reflect that the guaranty is unconditional and insures full payment to the Bank. *See,* "Continuing Guarantee Unlim-

---

1. U.C.C. 9–207(1): "A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed."

ited," Exhibits A and B, attached to Stipulations.

The type of guaranty issued by Freedman to HNB was of a continuing and unlimited nature. The guaranties attached to the Stipulations are entitled "Continuing Guaranty Unlimited." The significance of this characterization of the guaranties is that it renders the guarantor without an ability to obtain any form of discharge thereunder—*pro tanto* or a complete discharge of suretyship. At paragraph No. 3 of both guaranties, in pertinent part, the terms provide:

> Guarantors, and each of them, hereby promise that if one or more of the Obligations are not paid promptly when due, they, and each of them, will, upon request of Bank, pay the Obligations to Bank, *irrespective of any action or lack of action on Bank's part in connection with the acquisition, perfection, possession, enforcement or disposition of any or all Obligations or any or all security therefore* or otherwise, and further...."
> (Emphasis added).

The above-quoted guaranty language tracks the language of U.C.C. 3–606, in part, and is clear to reflect that the issuer of these guaranties [Freedman] deliberately waived any right of recourse against HNB in the event of an unjustifiable impairment of collateral committed by HNB. Thusly, this position argued by HNB is without merit and is indefensible. The guaranties in question were "payment guaranteed", meaning that the guarantor engages that if the instrument is not paid when due, he will pay it according to its tenor without resort by the holder to any other party. *See,* U.C.C. 3–416(1). Thusly, the Bank can proceed directly against Freedman before exhausting the principle security. Effectively, the terms of both guaranties provide consent to an impairment of collateral. Where, as here, a person consents to the partial or complete release of the collateral by the holder of the note, that party cannot then claim the benefit of the *pro tanto* discharge provided under Ohio law at Ohio Rev.Code § 1303.72(A). *See, Huron County Bank-*

*ing Co., supra,* 22 Ohio App.3d at 116, 489 N.E.2d 1049; *Federal Land Bank of Louisville v. Taggart,* 31 Ohio St.3d 8, 12–23, 508 N.E.2d 152 (1987). It is axiomatic that a party cannot assert a discharge by release under R.C. § 1303.72(A)(1) when he has consented to the conduct which he hereafter claims was effective to discharge his liability. *See also, Fireman Fund Ins. Co. v. Joseph J. Biafore, Inc.,* 526 F.2d 170, 175–76 (3d Cir.1975); *Nat'l. Acceptance Co. v. Demes,* 446 F.Supp. 388 (N.D.Ill. 1977).

In furtherance of the above finding that the subject guaranties were unconditional and payment guaranteed, the HNB's argument that an implied agreement that the lien of the security interest will be preserved upon proper filing, is not well-founded. In view of the above-quoted guaranty language, Freedman expressly consented to an impairment of collateral. *Joe Heaston Tractor & Implement Co. v. Security's Acceptance Corp.,* 243 F.2d 196, 199 (10th Cir.1957); *NationWide, Inc. v. Scullin,* 256 F.Supp. 929 (D.N.J.1966) (both cases rejected a theory of implied agreement of lien perfection).

The Trustee also correctly noted that the release of an obligation is an affirmative defense which must be specifically plead. Rule 8, Fed.R.Civ.P.. At bar, the Bank failed to so plead, causing a waiver of such defense. It is noted that each case relied upon by HNB involves a guarantor invoking an impairment of collateral defense. At bar, HNB the note holder, asserts the defense as a strategy to shield itself behind a statutory provision enacted for the benefit of a guarantor or surety. HNB lacks the requisite standing to assert this defense.

## VI.

Lastly, it is necessary to address whether the $42,755.88 transferred by the Debtor to HNB within one year prior (Stip. No. 11) to bankruptcy petition filing is avoidable as a preferential transfer. HNB argues that the ordinary course of business exception allowed under the § 547(c)(2) is

applicable to the present matter. The Trustee argues to the contrary, contending that these payments were not ordinary course payments under the § 547(c)(2) exception since they pertained to terms of long term commercial notes which are not within the § 547(c)(2) exception. The parties have stipulated that the payments totalling $42,755.88 were made preferentially (Stip. No. 12), with $10,066.68 of those payments protected from avoidance under provisions of § 547(c)(2). See, Stips. Nos. 4 and 13. Remarkably, the Stipulation No. 4 provides:

> 4. That prior to the year before the commencement of the within bankruptcy case. HNB made one or more commercial loans to the Debtor.... All of the foregoing loans were made in the ordinary course of business affairs of the Debtor and HNB, and according to ordinary business terms.

Recent case law within this Circuit does not support the Trustee's argument. "Long-term debt is as amenable to the exception of § 547(c)(2) as is any other type of debt, so long as the facts of the situation bring it within the ordinary course of business or financial affairs' language." *In re Finn*, 909 F.2d 903 (6th Cir.1990). Thusly, the § 547(c)(2) exception may be applicable to the prepetition payments totalling $42,-755.88.

## CONCLUSION

Accordingly, the Trustee's motion for a grant of partial summary judgment is sustained in part and is overruled in part. HNB's motion for summary judgment is overruled, in part, and is sustained, in part.

IT IS SO ORDERED.

