CRANBERRY FINANCIAL, L.L.C., Appellee,

v.

S & V PARTNERSHIP et al.; Schindley et al., Appellants.

[Cite as *Cranberry Fin., L.L.C. v. S & V Partnership*,
186 Ohio App.3d 275, 2010-Ohio-464.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–09–004.

Decided Feb. 12, 2010.

David J. Coyle and Nathan A. Hall, for appellee.

James J. Martin, for appellants.

HANDWORK, Judge.

{¶ 1} This is an appeal of a judgment ordering foreclosure. Appellants, Robert and Carol Schindley, appeal the judgment of the Huron County Court of Common Pleas, which granted summary judgment to Cranberry Financial, L.L.C. For the following reasons, the judgment is affirmed.

{¶ 2} Appellants have filed two assignments of error for review:

{¶ 3} "The trial court erred in granting summary judgment to appellee because there was a genuine factual issue regarding whether the bank had agreed to release appellants' real estate as collateral for the loan.

{¶ 4} "The trial court erred in its construction of the agreement between the parties. An ambiguous agreement is construed against the drafter."

{¶ 5} Since appellants have argued both assignments of error jointly in their brief, and since both assignments of error challenge the grant of summary judgment, we will likewise address the assignments of error jointly.

{¶ 6} An appellate court reviews a grant of summary judgment de novo, the same standard applied by the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Civ.R. 56(C) provides:

{¶ 7} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

{¶ 8} Summary judgment is proper where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936. The evidentiary materials submitted must be viewed in the light most favorable to the opponent of the summary-judgment motion. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 424 N.E.2d 311; *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 360, 12 O.O.3d 321, 390 N.E.2d 810.

{¶ 9} The instant dispute involves a promissory note, a mortgage executed to secure the note, and a subsequent agreement altering a term of the note. A promissory note is a contract, and rules of contract interpretation apply to the interpretation of promissory notes. *Commercial Credit Co. v. Bishop*

(1927), 34 Ohio App. 217, 225, 170 N.E. 658, citing *Holzworth v. Koch, Mayer & Goldsmith* (1875), 26 Ohio St. 33, 1875 WL 4. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241[, 7 O.O.3d 403, 374 N.E.2d 146]." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271.

{¶ 10} If, however, an ambiguity is present such that parol evidence is necessary to resolve the ambiguity, a factual determination of intent or reasonableness may be necessary to supply the missing term. Id. The fact-finder may also examine the surrounding circumstances of the transaction to determine the parties' intent. *Smith v. Vaughn*, 174 Ohio App.3d 473, 2007-Ohio-7061, 882 N.E.2d 941; *Huron Cty. Banking Co., N.A. v. Knallay* (1984), 22 Ohio App.3d 110, 22 OBR 311, 489 N.E.2d 1049.

{¶ 11} Further, it is axiomatic that contracts—including promissory notes—are construed against the drafter. "[T]he rule is well established that where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. *Smith v. Eliza Jennings Home* [1964], 176 Ohio St. 351[, 27 O.O.2d 305, 199 N.E.2d 733]. In other words, he who speaks must speak plainly or the other party may explain to his own advantage." *McKay Mach. Co. v. Rodman* (1967), 11 Ohio St.2d 77, 80, 40 O.O.2d 87, 228 N.E.2d 304.

{¶ 12} This complaint in foreclosure was brought by Lehman Brothers Bank [1] against, inter alia, S & V Partnership, and, as individuals, appellants Robert Schindley and Carol Schindley. The complaint alleged a default on a promissory note and sought foreclosure on three mortgages securing the note.

{¶ 13} The first mortgage was executed by Kipton Van Fleet and Jill Van Fleet, general partners of S & V Partnership, for an interest in 228 Sheffield Street. Underneath their signatures, a typewritten sentence states, "BEING ALL PARTNERS IN SAID PARTNERSHIP." The second mortgage was executed by Carol Schindley, individually, for an interest in 224 Sheffield Street. Robert Schindley signed a release of dower for the mortgage. The third mortgage was executed by appellants Carol and Robert Schindley, both individually, for an interest in 403 Brinker Street.

---

1. All three mortgages and the note were executed for Clyde Savings Bank. Due to a succession of bank mergers, the mortgages and note were assigned to and recorded by various banks, until they were eventually held by Lehman Brothers Bank. During the course of the trial court proceedings, Lehman Brothers Bank assigned the mortgages and note to appellee, Cranberry.

{¶ 14} All three mortgages secured one note, in the amount of $630,000. On the second page of the note, a paragraph provides: "COLLATERAL. Borrower acknowledges this Note is secured by * * *." A description of the three mortgages and the three corresponding properties follows. The note was executed by Kipton and Jill Van Fleet, both signing again as general partners of S & V Partnership.

{¶ 15} Approximately eight months after the execution of the three mortgages and note, Clyde Savings Bank and Kipton and Jill Van Fleet executed a "Change in Terms Agreement," which modified the promissory note. The change-in-terms agreement provides the point of dispute in this foreclosure.

{¶ 16} The agreement mirrors the promissory note in form, with some exceptions. First, on the top of the front page of the agreement, the following paragraphs state:

{¶ 17} "DESCRIPTION OF EXISTING INDEBTEDNESS. A commercial real estate installment loan in the initial amount of $530,000 maturing April 27, 2026.

{¶ 18} "DESCRIPTION OF COLLATERAL. Mortgage on property located at 224 and 228 Sheffield Street, Bellevue, Ohio 44811.

{¶ 19} "DESCRIPTION OF CHANGE IN TERMS. Change in terms as follows: Rate of loan to be changed to 7.5% based on the New York prime index, currently 4.75%, with a margin of 2.25% to be adjusted every three (3) years. Next rate adjustment will be May 27, 2004. In addition, the floor will be reduced to 4.75% from 7.00%. New payment amount is $4541.82 beginning January 27, 2002. All other terms of the original agreement will remain in effect."

{¶ 20} The second page of the agreement also states the following:

{¶ 21} "COLLATERAL. Borrower acknowledges this Agreement is secured by a Mortgage dated April 27, 2001, to Lender on real property located in Huron County, State of Ohio, all the terms and conditions of which are hereby incorporated and made part of this Agreement.

{¶ 22} "CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. * * *."

{¶ 23} Both parties moved for summary judgment. Appellants argued that the change-in-terms agreement demonstrated an intent by Clyde Savings Bank and S & V to "drop" the third mortgage as collateral securing the note. Therefore, appellants argued that the mortgage for 403 Brinker Street, signed by them individually, could not be foreclosed upon a default on the note. In granting

Lehman Brothers Bank's motion for summary judgment, the trial court reconciled the difference in the description of collateral between the original note and the change-in-terms agreement by stating:

{¶ 24} "Defendants assert that the 403 Brinker Street property was 'deleted' by the bank as collateral and argues that the Change in Terms Agreement dated December 18, 2001 evidenced this change in the collateral. A review of the Original Promissory Note and the Change in Terms Agreement shows that there are some discrepancies. At the top of the Change in Terms Agreement under the heading 'Description of Collateral,' only the 224 and 228 Sheffield Street properties are referenced. Nowhere in the Change in Terms Agreement is there any mention of the 403 Brinker Street property. However, under the heading 'Description of the Change in Terms' there is likewise no mention of the 403 Brinker Street property. Thus, one could make the inference that the 'Description of Collateral' was the result of an agreement to remove the 403 Brinker Street property from the collateral. One could also make the inference that the 403 Brinker Street property's status as collateral was not intended to be changed due to the fact that it was not mentioned in the 'Description of the Change in Terms.' "

{¶ 25} The trial court resolved these competing inferences by reference to the "Continuing Validity" clause in the change-in-terms agreement. The clause provides as follows: "Except was expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future changes in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  * * *."

{¶ 26} The trial court found that while the 403 Brinker Street property was not listed in the "Description of Collateral," it did not constitute an express change because the change was not "expressly" stated in the section "Description of Change in Terms." Therefore, it denied Carol and Robert Schindley's motion for summary judgment and found their property at 403 Brinker Street to be subject to foreclosure in payment of S & V's liability on the note.

{¶ 27} Appellants argue that nothing in the "Continuing Validity" clause requires "express" changes to be made only in the "Description in Change of Terms" section. They argue that the omission of the 403 Brinker Street property from the "Description of Collateral" section is an "express" change to a material term.

{¶ 28} Cranberry, as holder of the note, raises the statute of frauds against the Schindleys' argument. Cranberry cites *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph four of the syllabus: "When a party voluntarily places his signature upon a note or other writing within the Statute of Frauds, and where that party's sole defense to an action brought upon the writing is that a different set of terms was orally agreed to at that time, such defense shall not be countenanced at law regardless of the theory under which such facts are pled. In such event, the writing alone shall be the sole repository of the terms of the agreement."

{¶ 29} Cranberry's argument is well taken. Robert and Carol Schindley, while they did not sign the promissory note or the change-in-terms agreement, did execute a mortgage on the 403 Brinker Street property, granting an interest in that property to Clyde Bank, and by extension, its successors in interest. The mortgage is a contract separate from the promissory note. *Hurd v. Robinson* (1860), 11 Ohio St. 232, 1860 WL 43. While the change-in-terms agreement may have altered the obligations under the promissory note, it did not alter appellants' obligation under the mortgage. See *Bank One, Dover, N.A. v. J.A.M. Trans. Serv. Inc.* (Mar. 6, 1997), 5th Dist. No. 96AP040040, 1997 WL 115673; *Liberty Sav. Bank, F.S.B. v. Sortman* (Apr. 17, 1998), 2d Dist. No. 16532, 1998 WL 184483.

{¶ 30} As in *Liberty Sav. Bank, F.S.B. v. Sortman*, appellants' mortgage operated to impose upon appellants an obligation to answer for the debt of another, thus making them sureties. The statute of frauds, R.C. 1335.05, requires such an obligation to be in writing and signed by the parties sought to be charged. The mortgage is in writing and signed by appellants. " '[A] mortgage given to secure the obligation of a third person is valid and enforceable, and creates a surety relationship between the mortgagor and mortgagee.' 69 Ohio Jurisprudence 3d [ (1986) 182, Mortgages, Section 139]." Id. Since appellants did not sign the promissory note or the change-in-terms agreement, they are not principally liable for the debt through the promissory note. As in *Liberty*, however, "in conveying a mortgage * * * to secure payment of the debt represented by the notes, [appellants] effectively obligated themselves to pay the amounts due under the notes in the event of a default, or risk foreclosure of the mortgaged property."

{¶ 31} Additionally, the mortgage provides that "Lender shall not be deemed to have waived any rights under the Mortgage unless such waiver is given in writing and signed by Lender." This provision supports Cranberry's argument that in order for 403 Brinker Street to have been released as collateral, the lender would have to have executed a separate release. The change-in-terms agreement, while changing the terms of the promissory note, did not operate to release appellants'

obligation to answer for the debt under the separate mortgage contract. And the change-in-terms agreement does not create any ambiguity within appellants' separate surety contract with appellee. As there is no ambiguity in the mortgage, summary judgment for appellee was appropriate.

{¶ 32} For the foregoing reasons, appellants' two assignments of error are not well taken. The judgment of the Huron County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

SINGER and BOYLE, JJ., concur.

MARY J. BOYLE, J., of the Eighth District Court of Appeals, sitting by assignment.